1 | **SPINELLI, DONALD & NOTT**
A Professional Corporation
2 | Domenic D. Spinelli, SBN 131192
815 S Street, Second Floor
3 | Sacramento, CA 95811
Telephone: (916) 448-7888
4 | Facsimile: (916) 448-6888
Email: DomenicS@SDNLaw.com

Attorneys for Defendants,
**DAN BEUKELMAN, Assistant Vice Principal
of Sierra High School, and GREG LELAND,
Vice Principal of Sierra High School**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.V., through next friend and mother HEATHER VICTOR,<br><br>Plaintiffs,<br><br>vs.<br><br>DAN BEUKELMAN, Assistant Principal of Sierra High School; GREG LELAND, VICE PRINCIPAL OF SIERRA HIGH SCHOOL,<br><br>Defendants. | Case No. 2:15-CV-02163-JAM-CKD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: February 22, 2016<br>Time: 1:30 pm<br>Courtroom: 6<br>Judge: John A. Mendez |

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS................................................................................. i

TABLE OF AUTHORITIES........................................................................... ii

I. INTRODUCTION ............................................................................... 1
II. STATEMENT OF FFACTS.................................................................. 1
III. LEGAL ARGUMENT........................................................................... 5
    A. The Court Lacks Jurisdiction Because Plaintiff Failed to Exhaust
        the Available Internal Remedies............................................................. 5
    B. The Preliminary Injunction Seeks Inappropriate Relief............................ 6
        1. T.V.'s Requested Relief is Impermissibly Vague............................. 6
        2. It is Improper to Grant a Preliminary Injunction When the Relief
           Sought is Largely All the Relief the Movant Would Obtain After a
           Trial on the Merits.......................................................................... 6
    C. Legal Standard for Preliminary Injunction............................................. 7
        1. T.V. Has Not Demonstrated That She is Likely to Prevail on the
           Merits of Her Case........................................................................ 8
           a. The District's Dress Code is a Viewpoint-Neutral Regulation
              of Expressive Conduct............................................................. 8
           b. T.V.'s Shirt Substantially Disrupted the School Environment........... 9
           c. Students Have a Right to be Left Alone..................................... 12
           d. T.V.'s Claim That Disruptive Actions of Other Students are
              Irrelevant is Misplaced........................................................... 13
        2. T.V. Cannot Demonstrate She Has Suffered Irreparable Harm............... 13
        3. Balance of the Claimed Injuries Results in Significant Injury to
           Defendants With Minimal Effect on T.V. ......................................... 14
        4. The Relief Sough by T.V. Does Not Serve the Public Interest ............... 14
    D. The Additional Authority Belatedly Provided by T.V. is Not Persuasive ......... 15

# TABLE OF AUTHORITIES

|  | Page |
|---|---|
| *Baker v. Downey City Bd. of Educ.* (C.D. Cal. 1969) 307 F.Supp. 517 | 13 |
| *Chandler v. McMinneville School District* (9th Cir. 2008) 978 F.2d. 524, 529 | 8 |
| *DISH Net. Corp. v. FCC* (9th Cir. 2011) 653 F.3d 771, 776 | 7, 14 |
| *Earth Island Inst. v. Carlton* (9th Cir. 2010) 626 F.3d 462, 469 | 8 |
| *eBay, Inc. v. MERCEXCHANGE, LLC* (2006) 547 U.S. 388, 394 | 14 |
| *Harper v. Poway Unified School District* (2006) 445 F.3d 1166, 1176-1177 | 8, 12, 13 |
| *H.S. v. Bethlehem Area Sch. Dist.* (2002) 807 A.2d 847, 868 | 10 |
| *In Re William G.* (1985) 40 Cal.3d 550, 563 | 15 |
| *Jacobs v. Clark County School Dist.* (2008) 526 F.3d 419, 492 | 8 |
| *Mazurek v. Armstrong* (1997) 520 U.S. 968, 972 | 8 |
| *McKinney v. Carey* (9th Cir. 2002) 311 F.3d 1198, 1199 | 6 |
| *R.C. v. Beverly Hills Unified School District* (C.D. Cal. 2010) 711 F.Supp.2d 1094, 1110 | 10 |
| *Roche Products, Inc. v. Bolar Pharm. Co.* (CA Fed. 1984) 733 F.2d 858, 865 | 14 |
| *Schrier v. Univ. of Colorado* (10th Cir. 2005) 427 F.3d 1253, 1258-1259 | 7 |

*Tinker v. Des Moines Independent Community Sch. Dist.*
    (1969) 393 U.S. 503, 504 ................................................................8, 9, 10, 12, 13

*Univ. of Tex. v. Camenisch*
    (1981) 451 U.S. 390, 395................................................................ 6

*Winter v. Nat. Res. Defense Council*
    (2008) 129 S. Ct. 365, 374................................................................ 7

**Statutes:**

Cal. Educ. Code § 44807................................................................ 15

Cal. Educ. Code § 48950 (a), (f)................................................................ 15

# I. INTRODUCTION

Plaintiff's preliminary injunction seeks to allow her to wear a specific shirt to school is improper. High school students do not enjoy the same First Amendment freedoms on a school campus that they have off campus. Schools must limit a student's speech when it infringes on the rights of other individuals or causes a disruption on campus. As such, T.V. cannot meet the standard required for the Court to grant the requested injunction. Further, the specific relief she seeks is impermissibly improper and the issue should be adjudicated at trial.

# II. STATEMENT OF FACTS

Plaintiff T.V. is a junior at Sierra High School. On August 10, 2015, she wore a shirt to school with large print stating "Nobody knows I'm a lesbian." That morning, her band and music composition teacher, Rick Hammarstrom, saw the shirt and asked Vice Principal Greg Leland if it was appropriate under the dress code. Mr. Leland replied that, based on past practice, such a shirt would not be allowed.[1] Mr. Leland asked Mr. Hammarstrom to send T.V. to the office; however, Mr. Hammarstrom did not want T.V. to know it was him who reported the shirt. At the end of second period, a campus monitor brought a pass to Mr. Hammarstrom's classroom for T.V. to use; she went to the office during her third period class.[2]

At the office, T.V. told the school secretary that she thought she had been sent up because of her shirt. The school has a collection of shirts to lend a student when his own shirt is not suitable.[3] T.V. stated she was not going to change her shirt and instead would go home.[4] At that point, Mr. Leland approached and told T.V. she could not wear her shirt because it was a disruption and in the past, they had not allowed students to wear shirts on campus that express sexual preference or sexuality. T.V. went home for the rest of the day; she was not suspended or disciplined in any way. Later that morning, T.V.'s father called Mr. Leland. They discussed why the shirt was inappropriate for school. T.V.'s father assured him that T.V. would not wear the shirt.

Later that day, T.V. left Mr. Leland a message, asking to talk with him about her shirt.

---

[1] Declaration of Greg Leland, ¶ 2.
[2] Leland Decl., ¶ 2.
[3] Leland Decl., ¶ 4.
[4] Leland Decl., ¶¶ 3-4.

When they met the next day, T.V. began to argue with Mr. Leland when he told her he was following District policy.[5] Mr. Leland suggested that she meet with Assistant Principal Beukelman. Mr. Beukelman told T.V. that the shirt violated the dress code. They discussed what the shirt could "imply" sexually. Mr. Beukelman confirmed the shirt was inappropriate for school and that if a student wore a shirt stating he or she was a heterosexual, that shirt would similarly be disallowed.[6] In fact, Principal Clark previously asked a student who wore a shirt stating "I am a heterosexual" to change his shirt for the day. Like T.V., this student was not disciplined.[7]

The following morning, T.V. went to Mr. Hammarstrom's office during her Music Theory class. T.V. asked Mr. Hammarstrom why he had "dress coded" her and if it was due to his beliefs, as Mr. Hammarstrom is Mormon. T.V. also told Mr. Hammarstrom that she was having a hard time with school and family issues, and that her family's strong Christian values were at odds with her sexuality. Mr. Hammarstrom informed T.V. that he did not think the shirt met the dress code, the purpose of which is to promote a learning environment with as few distractions as possible, but also explained his position on sexuality with regard to his Mormon faith.[8] The same day, Mr. Leland and T.V. met again. T.V. told Mr. Leland she wanted to transfer out of her Music Theory class based on Mr. Hammarstrom's comments about religion.[9]

On August 13, another meeting was held with T.V. and her father, Mr. Hammarstrom, Mr. Leland, and Mr. Beukelman. They discussed a schedule change so that T.V. would no longer be in Mr. Hammarstrom's Music Theory class. T.V. further felt uncomfortable because students were talking about religion and sexuality in front of her in that class. However, T.V. and her father said they liked Mr. Hammarstrom and T.V. noted he was her favorite teacher. She agreed not to wear the shirt again because she respected Mr. Hammarstrom and did not want to upset him. T.V. agreed that she would remain in both of her classes with Mr. Hammarstrom's. During the meeting, Mr. Leland also explained that shirts with slogans such as "Nobody knows I'm a heterosexual," and shirts that promoted "pro-life," "pro-choice," or gang-related attire and images, were not permitted at school.

---

[5] Leland Decl., ¶ 6.
[6] Declaration of Dan Beukelman, ¶ 2.
[7] Leland Decl., ¶ 12; Declaration of Steve Clark, ¶ 7.
[8] Declaration of Rick Hammarstrom, ¶ 3.
[9] Leland Decl., ¶ 10.

<u>T.V. admitted that she wore the shirt to see what reaction she would get from Mr. Hammarstrom.</u>[10]

After this meeting, Mr. Hammarstrom and Mr. Leland spoke to "Emily," the student who had made comments in Mr. Hammarstrom's class regarding religion and sexuality, and told her that such a conversation was not appropriate to have in the classroom.[11] A few weeks later, Mr. Leland contacted T.V. again. T.V. reported that the conversations were ongoing in Mr. Hammarstrom's classroom and she was uncomfortable. T.V. reiterated her prior request to be moved from Mr. Hammarstrom's Music Theory class. Mr. Leland agreed to change T.V.'s schedule and spoke to "Emily" again.[12] "Emily" informed him that T.V. had participated in the conversation.[13]

T.V. never again addressed her t-shirt with Mr. Beukelman or Mr. Leland after the August 24 meeting. T.V. never discussed the t-shirt or any discomfort at school with school Principal Steve Clark or District Superintendent Jason Messer, who has an "open-door" policy with students and families.[14] T.V. did not complete a Witness to Incident Form, which students may use to make a complaint or address a concern;[15] T.V. knew about this procedure and had utilized it in the past for other issues.[16] Neither T.V., nor her parents, utilized the Uniform Complaint Procedure to provide a completed Uniform Complaint form.[17] Nor did they request a hearing regarding their claim that T.V. has been deprived of her right to freedom of expression, as provided in the District's Freedom of Speech/ Expression Policy.[18] After August 24, Defendants believed the shirt issue was resolved to T.V.s' satisfaction until receipt of this lawsuit, as T.V. utilized <u>no</u> available internal remedy.

**GSA Club**: Sierra High School has an extra-curricular Gay-Straight Alliance Club. The Club has a school-approved Club shirt with its slogan "BElieve in YOUrself!" Underneath the slogan it says "Sierra High School GSA." Based on the sign-in sheets, T.V. is not a member of the GSA as she has never signed in as attending a meeting.[19]

**Dress Code Violations**: Violations of the dress code can cause a disruption in the school

---

[10] Leland Decl., ¶ 9.
[11] Beukelman Decl., ¶ 3; Leland Decl., ¶¶ 10; Hammarstrom Decl., ¶ 4.
[12] Leland Decl., ¶ 10; Beukelman Decl., ¶5; Hammarstrom Decl., ¶ 5.
[13] Leland Decl., ¶ 10.
[14] Declaration of Steve Clark, ¶ 6.
[15] Clark Decl., ¶ 3.
[16] Leland Decl., ¶ 19.
[17] Clark Decl., ¶ 6.
[18] Clark Decl., ¶¶ 5-6.
[19] Beukelman Decl., ¶ 7.

day and Sierra High School takes compliance seriously. The staff is instructed to identify violations and rectify them appropriately, whether asking the student to remove the article, issuing a detention, setting up a meeting with the parents, etc. In the past six years, there have been approximately 2,576 documented dress code violations at the high school, including apparel that reveals too much skin, states "I love boobies" for breast cancer support, or references drugs, alcohol, violence, or gangs. The school does not document every infraction, especially minor or first-time violations.[20]

Specifically related to sexual orientation, the school has documented a student who wore a shirt that said "I like girls who kiss girls." That student received a warning and was asked to change shirts. Another student was documented for wearing a shirt stating "Just Do You," as it was interpreted by school staff as being sexual in nature. As mentioned above, a student wearing a shirt stating "I am a heterosexual" was asked to change. Enforcement of the dress code helps to protect the physical and emotional safety of students and staff, which is of the utmost importance.[21]

**Manteca Unified School District Board Policies**: Manteca Unified School District utilizes regulations and policies to ensure the successful administration of its schools. Its policy regarding student Dress and Grooming provides:

> Clothing, accessories, and jewelry shall be free of writing, pictures, symbols or other insignia, which are crude vulgar, profane, obscene, libelous, slanderous, or sexually suggestive. <u>Clothing that degrade[s] any cultural, religious</u> or <u>ethnic values</u> or <u>which advocate</u> racial, ethnic, or <u>religious prejudice or discrimination, or which promote sex</u>, the use of tobacco, drugs, or alcohol or any unlawful acts <u>are prohibited</u>. (MUSD AR 5132(a), emphasis added.)[22]

District policies further hold that "the principal, staff, students and parent/guardians at each school may establish reasonable dress and grooming regulations for times when students are engaged in extracurricular or other special school activities" and that schools may have a dress code prohibiting gang-related apparel. <u>The dress code policy is that of the District, not the individual school sites</u>. The dress code contained in the Sierra High School Student-Parent Handbook is the District's Administrative Regulation 5132(a).[23]

---

[20] Leland Decl., ¶ 11-12.
[21] Clark Decl., ¶ 7.
[22] Leland Decl., ¶ 13 and Ex. D.
[23] Leland Decl., ¶ 13.

The District also maintains a policy regarding Freedom of Speech and Expression:[24]

> The primary liberties in a student's life have to do with the process of inquiry and learning, of acquiring and imparting knowledge, and of exchanging ideas. The process requires that students have the right to express opinions, to take stands, and to support causes, publicly or privately. There should be no interference in the school with these liberties, or with the students' access to or expression of controversial points of view, except as provided below.

Under "Hearings," the policy notes that "Any student or group deprived of freedom of expression under any of these provisions shall have the right to request a hearing to determine whether such deprivation is justified under these rules…" As noted above, T.V. never requested a hearing.

The District recognizes that students have a right to freedom of speech and expression, but it must also place limitations on those freedoms to ensure both the safety of the school and the students' additional right to an appropriate education without interference. Notably, T.V. did not sue the District; she seeks relief against only Vice Principal Leland and Assistant Principal Beukelman, who only have authority to enforce the District's policies at Sierra High School.

**Ongoing Disruptions at Sierra High School**: The school staff continues to spend significant time and effort handling the fall-out from this shirt. Three days after she wore her shirt, T.V. began sending Tweets, causing a social media frenzy and eliciting negative comments about the staff.[25] On November 6, T.V. used a Witness to Incident form to complain that another student was threatening T.V. and her girlfriend.[26] On January 14, T.V. issued a government tort claim, which alleges seven separate incidents of claimed harassment based on her sexuality, stemming from having worn her t-shirt.[27] Four of the allegations in the tort claim were never previously reported to the administration and investigations into the incidents began almost immediately.[28] Prior to wearing her shirt, T.V. made no complaints to administrators about alleged harassment based on sexual orientation.

### III. LEGAL ARGUMENT

**A. The Court Lacks Jurisdiction Because Plaintiff Failed to Exhaust the Available Internal Remedies.**

Where administrative remedies exist, a plaintiff must exhaust those avenues of relief before

---

[24] Clark Decl., ¶ 5 and Ex. C.
[25] Beukelman Decl., ¶ 10 and Ex. A.
[26] Leland Decl., ¶ 19.
[27] Leland Decl., ¶ 20 and Ex. F.
[28] Leland Decl., ¶ 20.

filing a lawsuit. If not, the plaintiff's case should be dismissed for failure to pursue those informal opportunities.[29] Prior to filing this lawsuit, T.V. had the ability to speak to either Principal Clark or Superintendent Messer, complete a Witness to Incident Form, complete a Uniform Complaint Form, or request a hearing under the Freedom of Speech/Expression Policy.;[30] she did <u>none</u> of these. Had T.V. attempted even one of the <u>five</u> options available to her, the issue could likely have been satisfactorily resolved without expending time and funds to litigate this issue. The court should not reward T.V.'s refusal to undertake a reasonable alternative to a lawsuit, should not grant her Motion for Preliminary Injunction, and should dismiss the lawsuit.

**B. The Preliminary Injunction Seeks Inappropriate Relief.**

T.V.'s Motion improperly seeks the following, specific relief, as set forth in her Proposed Order: "Pursuant to this Order, Defendants ... are prohibited and enjoined from prohibiting T.V. from wearing her 'Nobody knows I'm a lesbian' shirt or similar expressions of LGBT sexual orientation or LGBT equal rights at school." The phrase "LGBT equal rights" is overbroad and goes beyond the facts at issue in this case. This relief is not tailored to be realistically enforced.

**1. T.V.'s Requested Relief is Impermissibly Vague.**

T.V. requests that the court enjoin Defendants from preventing T.V. from wearing the shirt at issue in this lawsuit, as well as "similar expressions of LGBT sexual orientation or LGBT equal rights." This is impermissibly vague and overbroad. It is categorically unfair to expect Defendants to guess what T.V. or her attorneys believe a "similar expression" of sexual orientation or equal rights might be. T.V. is positioning Defendants for failure: if their version of this category is not the same as T.V.'s or her counsel and they act accordingly to enforce their decision at Sierra High School, T.V. will argue that Defendants have violated the Court's Order.

**2. It is Improper to Grant a Preliminary Injunction When the Relief Sought is Largely All the Relief the Movant Would Obtain After a Trial on the Merits.**

The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held."[31] There are three types of "specifically disfavored"

---

[29] See, e.g. *McKinney v. Carey* (9th Cir. 2002) 311 F.3d 1198, 1199.
[30] Clark Decl,. ¶¶ 2-5.
[31] *Univ. of Tex. v. Camenisch* (1981) 451 U.S. 390, 395.

injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.[32] T.V.'s requested relief violates all these: "Mandatory injunctions 'affirmatively require the nonmovant to act in a particular way.' Injunctions that disturb the status quo alter the parties existing relationship. 'The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights.'"[33] The current "status quo" is that the District's dress code is interpreted to include T.V.'s shirt as a banned item of clothing. T.V. seeks to change the current state of the dress code by allowing a shirt that is presently prohibited. This disturbs the status quo and would constitute a mandatory Order, affirmatively requiring Defendants to change their interpretation of the District's dress code and allow T.V. to wear her shirt.

Finally, T.V.'s Motion for Preliminary Injunction seeks an order enjoining Defendants from prohibiting T.V. from wearing her "Nobody knows I'm a lesbian" shirt. T.V. also seeks $1 in compensatory damages. This is essentially the same relief T.V. requests in her Complaint. Even though T.V. seeks additional orders, such as an order declaring that Defendants violated T.V.'s First Amendment rights and engaged in unlawful viewpoint discrimination, those orders would be based on her belief – as set forth in this Motion - that she is entitled to wear her shirt and her rights were violated when Defendants asked her not to. A Preliminary Injunction is not the appropriate vehicle for her requested relief and the Court should require that T.V. proceed to a trial on the merits.

**C. Legal Standard For Preliminary Injunction.**

In order to obtain a preliminary injunction, T.V. must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor <u>and</u> that an injunction is in the public interest.[34] <u>Each</u> of these factors must be met, even if a case contemplates a First Amendment issue.[35] "'An injunction

---

[32] *Schrier v. Univ. of Colorado* (10th Cir. 2005) 427 F.3d 1253, 1258-1259, emphasis added.
[33] *Schrier v. University of Colorado*, supra, 427 F.3d at 1259, citing *SCFC ILC, Inc. v. Visa USA, Inc.* (10th Cir. 1998) 150 F.3d 1163, 1165.
[34] *Winter v. Nat. Res. Defense Council* (2008) 129 S. Ct. 365, 374.
[35] *DISH Net. Corp. v. FCC* (9th Cir. 2011) 653 F.3d 771, 776.

DEFENDANTS' OPPOSITION TO T.V.'S MOTION FOR PRELIMINARY INJUNCTION

is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"[36] "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[37]

### 1. T.V. Has Not Demonstrated That She Is Likely to Prevail on the Merits of Her Case.

#### a. The District's Dress Code is a Viewpoint-Neutral Regulation of Expressive Conduct.

The District's dress code is a content-neutral restriction, applied equally to all disruptive communications, regardless of the specific nature or content of the message. In the *Chandler* matter, the court set forth three "distinct areas" of student speech: (1) vulgar, lewd, obscene, and plainly offensive speech, (2) school-sponsored speech, and (3) all other speech.[38] The *Harper* case agrees, specifically stating that the "all other speech" category is analyzed pursuant to the *Tinker v. DesMoines* case.[39] T.V.'s shirt would fall into the third category of "other" speech governed by the *Tinker* case, discussed *infra*. T.V. contends that, because the "speech" in the *Tinker* case – black armbands – was considered "pure" speech and subject to strict scrutiny, *any* speech to be analyzed under *Tinker* must be "pure" speech subject to strict scrutiny. This is not the state of the law:

> While *Chandler* certainly says that all speech in the third category must be analyzed *under Tinker*, it does not say that all speech in this category has to be evaluated at the same level of scrutiny as that ultimately *used* in *Tinker*. In other words, while *Chandler* dictates that *Tinker* must guide our analysis of this case, it does not require us to blindly apply the standard employed therein.[40]

The District's dress code policy is a "school policy placing incidental restrictions on expressive conduct,"[41] to which intermediate scrutiny applies. The dress code is specifically tailored to encompass almost any conceivable violation because listing every potential violation in the code is impossible. In fact, the school has previously documented students who wore clothing that

---

[36] *Earth Island Inst. v. Carlton* (9th Cir. 2010) 626 F.3d 462, 469.
[37] *Mazurek v. Armstrong* (1997) 520 U.S. 968, 972.
[38] *Jacobs v. Clark County School Dist.* (2008) 526 F.3d 419, 492, citing *Chandler v. McMinneville School District* (9th Cir. 2008) 978 F.2d. 524, 529.
[39] *Harper v. Poway Unified School District* (2006) 445 F.3d 1166, 1176-1177.
[40] *Jacobs v. Clark County School Dist.*, supra, 526 F.3d at 429.
[41] *Id.* at 430.

referenced sexual orientation, along with apparel referencing drugs, alcohol, violence, and sex.[42]

T.V. will likely argue that the school singled her out for discrimination because there have been only few other violations by students for shirts referencing sexual orientation. However, that any type of dress code violation, such as those related to gang colors, may occur more often than another, such as a shirt referencing sexual orientation, does not render the administrators' action regarding T.V.'s shirt a pretext for viewpoint discrimination. There are simply not many students who have worn clothing related to sexual orientation; when it occurs, the school intervenes if apt. Further, the existence of the school's Gay-Straight Alliance Club, and its school-approved Club shirt, evidences that the administration is not only tolerant, but supportive of LGBT students. The shirt, stating "BElieve in YOUrself" <u>does not specifically reference any sexuality</u>. Rather, through the capitalization, it encourages each student to "be you." The shirt, without mention to any one group of people, is well within the content-neutral dress code policy, unlike T.V.'s.

### b. T.V.'s Shirt Substantially Disrupted the School Environment.

Even if the court were to categorize T.V.'s shirt as "pure" or "symbolic" speech, that does not end the inquiry as to whether she is permitted to wear it. Rather, even pure speech may be regulated when it causes a material and substantial disruption of the school environment. And, despite T.V.'s assertions otherwise, a material and substantial disruption of the school environment did occur, and it was not a "mild distraction or curiosity" as she indicates.

*Tinker v. Des Moines* involved high school students who wished to express their disapproval of the Vietnam War by wearing black arm bands to school.[43] Although no disturbance or disorder of the school's work or interference with the rights of other students occurred as a result of the arm bands, the students were suspended from school when they refused to remove them.[44] The Supreme Court approved the lower court's opinion that the students wore the arm bands for the purpose of expressing certain views, a symbolic act within the Free Speech Clause.[45] In reversing the judgment of the lower court, which upheld the District's ban on the arm bands, the Court stated: "Clearly, the

---

[42] Leland Decl., ¶ 12.
[43] *Tinker v. Des Moines Independent Community Sch. Dist.* (1969) 393 U.S. 503, 504.
[44] *Id.*, at p. 504.
[45] *Id.*, at p. 505.

prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with schoolwork or discipline, is not constitutionally permissible."[46] Specifically, a student may exercise her right to free speech unless the "conduct by the student, in class or out of it, which for any reason – whether time, place, or type of behavior – <u>materially disrupts class work or involves substantial disorder or invasion of the rights of others</u>."[47]

As set forth in *J.C. ex rel R.C.*, a "school can regulate student speech if such speech 'materially and substantially disrupt[s] the work and discipline of the school.' This standard does not require that the authorities wait until an actual disruption occurs; where school authorities can 'reasonably portend disruption' in light of the facts presented to them in the particular situation, regulation of student expression is permissible."[48] A substantial disruption requires something more than "a mild distraction or curiosity" but does not need to rise to the level of "complete chaos."[49] "There is no magic number of students or classrooms that must be affected by the speech."[50]

In *J.C.*, a group of students recorded a video off-campus, in which they negatively discussed a student. The video was uploaded to YouTube and the plaintiff encouraged others to watch it.[51] She was suspended for two days, eventually filing a lawsuit claiming her first amendment rights were violated when she was punished for making the video and posting it on the internet.[52] The Ninth Circuit found that no substantial disruption occurred, subject to *Tinker*, because "the fact that students are discussing the speech… is not sufficient to create a substantial disruption, at least where there is no evidence that classroom activities were substantially disrupted"[53] and administrators were not "pulled away from their ordinary tasks to respond to or mitigate the effects of a student's speech."[54] Here, these factors are met: not only were classroom activities disrupted and administrators were most certainly pulled away from their ordinary duties to handle T.V.'s shirt, but the rights of others are affected. The issues surrounding this t-shirt are ongoing.

---

[46] *Id.* at 511.
[47] *Id.* at 513, emphasis added.
[48] *J.C. ex rel R.C. v. Beverly Hills Unified School District* (C.D. Cal. 2010) 711 F.Supp.2d 1094, 1110.
[49] *Id.*, citing *J.S. ex rel H.S. v. Bethlehem Area Sch. Dist.* (2002) 807 A.2d 847, 868.
[50] *Id.*
[51] *J.C. ex rel R.C. v. Beverly Hills Unified Sch. Dist.*, supra, 711 F.Supp.2d at 1098.
[52] *Id.* at 1100.
[53] *Id.* at 1111.
[54] *Id.* at 1113.

SPINELLI, DONALD & NOTT

10
DEFENDANTS' OPPOSITION TO T.V.'S MOTION FOR PRELIMINARY INJUNCTION

First, T.V. specifically wore the shirt to see what reaction she would get from her teacher, Mr. Hammarstrom. She purposely wore the shirt to create a distraction at school, in her classroom. As she anticipated, Mr. Hammarstrom had to take time from his class period to communicate with Mr. Leland regarding whether the shirt was appropriate for school. Mr. Leland was pulled from his ordinary duties at least three times on August 10 regarding T.V.'s shirt – to communicate with Mr. Hammarstrom, to discuss the shirt with T.V., and to have a telephone conference with T.V.'s father. Over the next two days, further distractions occurred when Mr. Leland met with T.V. twice more.

On August 12, Mr. Hammarstrom's classroom was again interrupted when T.V. confronted him, during class, about why he "dress coded" her. Though T.V. initiated the meeting and spoke with Mr. Hammarstrom about personal issues, she was upset when he expressed his own speech and made comments about religion, and requested yet another meeting with Mr. Leland. T.V. told Mr. Leland she wanted to transfer out of Mr. Hammarstrom's class, an even further administrative disruption. Changing a student's schedule is not as simple as making a quick change in the computer. Issues such as the student's credits, class sizes, and the availability of alternate open classes must be taken into consideration.[55]

The next day, the ordinary activities of Mr. Leland, Mr. Beukelman, and Mr. Hammarstrom were disrupted for yet another meeting with T.V. and her father. In just three days, these individuals had participated in three meetings and a teleconference regarding this one shirt - not including the interruptions to Mr. Hammarstrom's classroom. Ironically, in this meeting regarding T.V's freedom to wear her shirt expressing her sexuality, the administration also discussed T.V.'s discomfort with Mr. Hammarstrom and fellow student "Emily" having exercised their own free speech regarding religion and sexuality. T.V. wants to express her own opinions and sexuality without be faced with others' opinions regarding the same topics; "Emily" was spoken to about the content of her speech so that T.V. would not be offended. At this same time, T.V. was sending "Tweets" out through her Twitter account regarding the t-shirt and the lawsuit, drawing negative comments about staff.[56] Defendants must take all interested parties' rights into consideration, yet T.V. is asking them, and

---

[55] Beukelman Decl., ¶ 7.
[56] Beukelman Decl., ¶ 9 and Ex. B.

this court, to elevate her freedoms over those of others.

Later that month, further distractions occurred in Mr. Hammarstrom's classroom when T.V. was again upset with comments "Emily" made about religion and sexuality. A <u>fourth</u> meeting was held between Mr. Leland and T.V., still stemming from T.V.'s shirt. T.V. again requested a change in schedule, which was accommodated, though requiring additional time and resources. After this meeting, the administration spoke to "Emily" again. And again, not only was administrative work interrupted, but "Emily's" speech was potentially censored to "keep the peace" at school. In just two weeks' time, Mr. Hammarstrom and school officials spent considerable time and effort – at least five separate meetings and a phone call – to address T.V.'s shirt and the fall-out from her having worn it. Interruptions occurred in Mr. Hammarstrom's class, not only by T.V. wearing her shirt specifically to antagonize him and then challenging him about it in class, but also by other students' comments to her about her shirt and its message, as well as T.V.'s complaints about those.

The disruptions were not limited to the day T.V. wore her shirt, or even the days following. They continue today, almost six months later. T.V. completed a Witness to Incident Form alleging that another student was threatening her and her girlfriend. T.V. has also presented a government tort claim to MUSD, with four additional, previously un-reported allegations. An investigation was undertaken as soon as the claims came to light. All of these claimed events have required that the administration undertake significant expenditures of time and resource to address. All of these allegations stem from the day T.V. wore her shirt and her social media posts. Defendants have significant time away from their ordinary duties to mitigate the effects of T.V.'s shirt. Much of the disruption has been brought on by T.V. herself. Not only were the Defendants well within their authority to tell T.V. the shirt was not appropriate for school, but the disruption continues.

**c. Students Have a Right to be Left Alone.**

T.V. wants to be "left alone" without others commenting about religion and sexuality while still wearing her own shirt explaining her sexuality. This is inconsistent with both the law and common sense. In *Harper,* a student was asked to remove his shirt that related to sexual orientation. The student sought a preliminary injunction allowing him to wear the shirt; the district court denied his motion and he appealed. The Ninth Circuit affirmed the district court, relying on *Tinker* to

determine that schools may prohibit speech that "intrudes upon...the rights of other students."[57] The shirt in *Harper*, unlike here, contained hateful speech toward homosexuals. However, the court's determination that students have a "right to be left alone," just as they have a right to free speech, supports Defendants' position. Defendants, as school administrators, have an obligation to protect not only T.V.'s rights, but also the rights of other students and teachers to be "left alone," engage in free speech, and have a learning environment free from disruption. Not only did T.V. request to be "left alone" by complaining about the speech of Mr. Hammarstrom and "Emily," but she refuses to do the same in return and not confront others with her shirt, which they might find offensive.

### d. T.V.'s Claim That Disruptive Actions of Other Students are Irrelevant is Misplaced.

T.V. erroneously argues that the actions of other students cannot be used to "determine the parameters of T.V.'s constitutional rights." The courts in *Tinker* and *Holloman* determined that in specific, factual situations, the other students' disruptive behavior did not rise to a level to constitute a "disruption" under the law. However, the court in *JC ex rel RC* noted that "the substantial disruption inquiry is highly fact-intensive."[58] The *Baker* court found the disruption that occurred at school after plaintiffs handed out underground papers justified the denial of injunctive relief for an alleged violation of the plaintiffs' First Amendment rights.[59] The disruption included students interrupting classes and failing to pay attention while reading and talking about the newspaper.[60] Chances are, at a high school, those undertaking any "disruption" are students. To unequivocally state that Defendants cannot take the actions of "other" students into consideration is plainly incorrect. Under *Tinker*, if speech "for any reason...materially disrupts classwork or involves substantial disorder or invasion of the rights of others," it may be limited by school officials.[61]

### 2. T.V. Cannot Demonstrate She Has Suffered Irreparable Harm.

T.V. asserts that she has suffered a "de facto irreparable injury" due to a First Amendment violation. However, the presumption of injuries as irreparable is highly dubious in a preliminary

---

[57] *Harper v. Poway Unified School District* (9th Cir. 2006) 445 F.3d 1166, 1175, citing *Tinker v. DesMoines Independent Community Sch. Dist.*, supra, 393 US at 508.
[58] *JC ex rel RC v. Beverly Hills Unified Sch. Dist.* (C.D. Cal. 2010) 711 F.Supp.2d 1094.
[59] *Baker v. Downey City Bd. of Educ.* (C.D. Cal. 1969) 307 F.Supp. 517.
[60] *Id.* at 522.
[61] *Tinker v. DesMoines Independent Community Sch. Dist.*, supra, 393 U.S. at 513.

injunction case. In *eBay, Inc.*, the Supreme Court notes that the Court of Appeal's categorical grant of injunctive relief was improper and that courts have "considerable discretion" in "determining whether the facts of a situation require it to issue an injunction."[62] An injury cannot be assumed, even in cases involving First Amendment rights.[63] The Court should balance all four *Winter* factors to determine whether the injunction is appropriate, rather than rely on T.V.'s claims that she has suffered irreparable harm. T.V. has not suffered irreparable harm because trial in this matter is set for February of 2017; should she prevail, she will have many months of high school left, during which to wear her shirt. Her claim that her speech rights have been completely abridged is inflated.

### 3. Balance of the Claimed Injuries Results in Significant Injury to Defendants With Minimal Effect on T.V.

"A preliminary injunction is an extraordinary remedy never awarded as of right...Courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' In exercising their sound discretion, courts of equity should pay particular regard for the consequences in employing the extraordinary remedy of injunction."[64] Here, forcing Defendants to let T.V. wear her shirt will have a widespread, adverse effect. Allowing T.V. to wear her shirt infringes upon the rights of others, as described above. Further, allowing the shirt makes it extremely difficult for the administration to protect the students: the dress code is implemented to protect the health and safety of both T.V. and her classmates. Allowing the shirt may negatively affect the emotional health of T.V.'s classmates who might find the shirt offensive, as well as the emotional health of T.V. should students make comments about the shirt or her sexual orientation. Granting the injunction and allowing T.V. to wear the shirt will almost certainly cause additional disruption and administrative burden when other students offend T.V. by talking about her shirt, religion and sexuality, as has occurred at least twice previously.

### 4. The Relief Sought by T.V. Does Not Serve the Public Interest.

Defendants agree that protection of free speech is critical. But, there are limitations to the freedoms given to students in high schools, including those usually protected under the First

---

[62] *eBay, Inc. v. MERCEXCHANGE, LLC* (2006) 547 U.S. 388, 394, citing *Roche Products, Inc. v. Bolar Pharm. Co.* (CA Fed. 1984) 733 F.2d 858, 865.
[63] *DISH Network Corp v. FCC* (9th Cir. 2011) 653 F.3d 771, 776.
[64] *Winter, supra*, 129 S.Ct. at 376-377.

Amendment. Student free speech rights are subject to reasonable time, place, and manner regulations.[65] This is especially critical in a high school, where the administration must provide a safe atmosphere for students maturing into adults while still displaying impulsive and, at times, senseless behavior. School campuses are not public meeting halls and students, who attend school for the purpose of obtaining an education, are not entitled to unlimited freedoms.

School districts have an affirmative duty to take reasonable steps to protect students.[66] "The right of all students to a school environment fit for learning cannot be questioned. Attendance is mandatory and the aim of all schools is to teach... The school premises, in short, must be safe and welcoming."[67] A student's right to free speech must be compared to other students' right a suitable school environment for learning. Messages presented by one student, such as T.V.'s shirt, might offend or distract a student, affecting his or her physical or mental well-being to the extent that his education is negatively compromised. In fact, T.V.'s shirt ultimately caused distraction to her own educational environment, as she sought to alter her class schedule due to comments made by a student after wearing her shirt. The Defendants must not only consider T.V.'s rights, but must also ensure the rest of its student body receives a safe and appropriate education. The public interest in such case weighs heavily in favor of ensuring a suitable learning environment for all students, rather than allowing one student to wear a potentially distracting shirt.

**D. The Additional Authority Belatedly Provided by T.V. is Not Persuasive.**

Over a month after T.V. filed this Motion, she filed a Notice of Supplemental Authority. The Middle District of Tennessee had decided a similar issue regarding a student wearing a shirt addressing LGBT rights. That Motion was not opposed and the Defendant never demonstrated there was a disruption to the school environment. Here, there was a significant disruption to the school environment, as well as interference to the rights of others, and the cases are not analogous.

DATED: January 26, 2016

                                      **SPINELLI, DONALD & NOTT**

By: /s/ Domenic D. Spinelli
DOMENIC D. SPINELLI
Attorneys for Defendants

---

[65] *Cal. Educ. Code* § 48950 (a), (f).
[66] *Cal. Educ. Code* § 44807.
[67] *In Re William G.* (1985) 40 Cal.3d 550, 563.