1 | **SPINELLI, DONALD & NOTT**
A Professional Corporation
2 | Domenic D. Spinelli, SBN 131192
815 S Street, Second Floor
3 | Sacramento, CA 95811
Telephone: (916) 448-7888
4 | Facsimile: (916) 448-6888
Email: DomenicS@SDNLaw.com
5 |
Attorneys for Defendants,
6 | DAN BEUKELMAN, Assistant Principal
of Sierra High School, and GREG LELAND,
7 | Vice Principal of Sierra High School

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **EASTERN DISTRICT OF CALIFORNIA**

11 |

12 | T.V., through next friend and mother
HEATHER VICTOR,

Case No. 2:15-CV-02163-JAM-CKD

13 | Plaintiffs,

**DECLARATION OF GREG LELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

14 | vs.

15 |

16 | DAN BEUKELMAN, Assistant Principal of Sierra High School; GREG LELAND, VICE PRINCIPAL OF SIERRA HIGH SCHOOL,

Hearing Date: February 22, 2016
Time:            1:30 pm
Courtroom:    6
Judge:          John A. Mendez

17 |

18 | Defendants.

19 |

20 | I, Greg Leland, declare as follows:

21 | 1.      I am the Vice Principal of Sierra High School in the Manteca Unified School

22 | District. This is my 31st year as an employee of the District. I was a teacher for 16 years and have

23 | been an administrator for 15 years. This is my fifth year as Vice-Principal. I have personal

24 | knowledge of the matters contained herein and, if called to do so, could and would testify to the

25 | facts set forth below.

26 | 2.      On August 10, 2015, I received an email from music/band teacher Rick

27 | Hammarstrom that inquired as to whether a shirt with large print stating "Nobody knows I'm a

28 | lesbian" was appropriate for school. I told him that, based on past practice, such a t-shirt would not

1

1  be allowed because it could lead to disruption in a classroom or on school grounds. I asked Mr.

2  Hammarstrom to send T.V. to the office. When she did not appear, I called Mr. Hammarstrom and

3  asked whether he had sent T.V. Mr. Hammarstrom replied that he did not want T.V. to know that he

4  was the teacher who reported the shirt and asked that I send a campus monitor with a pass to get

5  T.V.

6        3.     After second period that same day, I sent a campus monitor to bring a hall pass to

7  T.V. in Mr. Hammarstrom's classroom so that she could come to the office. T.V. appeared in the

8  office during third period. As T.V. had a conversation with Secretary Vi Anderson, I approached

9  her and told her that she could not wear her t-shirt because it was a school disruption and, based on

10  past practices, the school has not allowed t-shirts that express sexuality or sexual preference to be

11  worn on campus.

12        4.     The school has t-shirts in the office that students can wear if their own shirts violate

13  the dress code. T.V. refused to wear one of the school's shirts and instead went home. T.V. was not

14  sent home, but chose to go home instead of changing her shirt; she was not disciplined in any way,

15  including given detention or a suspension.

16        5.     Later that morning, T.V.'s father called me. We discussed the reasons why the shirt

17  was not appropriate for school and he agreed with me, assuring me that T.V. would not wear the

18  shirt again. T.V.'s father also told me he was upset that Mr. Hammarstrom had made some

19  comments about religion in his class, stating "if she can't wear her shirt, Hammar[strom] can't talk

20  about religion." I agreed that if religion is not part of the curriculum, it should not be discussed in

21  class.

22        6.     That same day, I received a message from T.V., indicating that she wanted to discuss

23  the T-shirt further. The next day, August 11, I met with T.V. regarding the dress code policy. T.V.

24  began arguing with me when I told her I was following the District's policy regarding the dress

25  code. I suggested that she speak with Mr. Beukelman and walked her over to Mr. Beukelman's

26  office. Within two days of T.V. wearing her t-shirt, I had two meetings with T.V. and a telephone

27  call with her father; I took time from my daily administrative duties to attend to the t-shirt issue.

28        7.     I met with T.V. again on August 12, 2015. T.V. told me that she had had a

2

DECLARATION OF GREG LELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1  conversation with Mr. Hammarstrom earlier that day that had upset her. She wanted to transfer out

2  of his Music Theory and Composition class, but remain in the other class she had with Mr.

3  Hammarstrom. The next day, I met with Mr. Beukelman, Mr. Hammarstrom, T.V., and her father to

4  discuss a change of schedule so that T.V. would no longer have to be in Mr. Hammarstrom's

5  classroom. During that meeting, T.V. told us that she felt uncomfortable because other students had

6  discussed religion and homosexuality in front of her. I kept handwritten notes from this meetings;

7  attached as Exhibit A is a true and correct copy of my notes. Before T.V. wore her t-shirt, I had

8  never heard a complaint from her regarding any comment Mr. Hammarstrom made to her in class.

9      8.    Also during the August 13 meeting, both T.V. and her father indicated how much

10  they liked Mr. Hammarstrom; T.V. indicated he was her favorite teacher. She stated that she would

11  not wear her t-shirt anymore because she respected Mr. Hammarstrom and did not want to upset

12  him. She agreed to stay enrolled in both of Mr. Hammarstrom's classes at that point.

13      9.    On August 10 and August 13, T.V. mentioned that she wore the t-shirt specifically to

14  see what reaction she would get from Mr. Hammarstrom.

15      10.    After the August 12 meeting, Mr. Hammarstrom and I spoke to "Emily," the student

16  who had made statements regarding religion and sexuality in front of T.V. We told her to that a

17  conversation about religion and sexuality was not appropriate to have in the classroom. Before T.V.

18  wore her t-shirt, we had never spoken to "Emily" about inappropriate conversations and had never

19  received a complaint about her from T.V. On August 24, 2015 I received an email from Mr.

20  Beukelman, requesting that I contact T.V. regarding an incident with this same student. Attached

21  hereto as Exhibit B is a true and correct copy of the email exchange between Mr. Beukelman and

22  me. I did so, and afterwards, T.V. and I had a conversation regarding comments the student had

23  made about religion. T.V. again indicated that she wanted to transfer out of this class and we

24  accommodated her request. I also spoke to "Emily" again about whether it was appropriate to

25  discuss religion and sexuality in class. "Emily" told me that T.V. had participated in the

26  conversation.

27      11.    Student dress code issues and violations are a major concern at Sierra High School.

28  Violations of the dress code can cause a major disruption in the school day, including students

DECLARATION OF GREG LELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1  interrupting class to discuss the offending item, students "sharing" offending items such as hats, and

2  students engaging in arguments or even physical altercations on the basis of perceived offensive

3  clothing. High school students are learning to peacefully interact while keeping their emotions and

4  impulses in check. The school staff has been instructed, and works relentlessly, to identify dress

5  code violations and rectify them appropriately, whether asking the student to remove the article of

6  clothing, issuing a detention, setting up a meeting with the student and parents, etc. The school

7  office maintains some t-shirts for students to wear if the shirts they wear to school are deemed

8  inappropriate.

9      12.    The "school dress code" at Sierra High School is the Manteca Unified School

10  District dress code. The Sierra High School administration is tasked with interpreting and enforcing

11  the District's policy. In the past six years, there have been approximately 2,576 documented dress

12  code violations at the high school. A student is never issued a suspension unless it is his fifth or

13  sixth issue with the same dress code infraction. Attached hereto as Exhibit C is a true and correct

14  copy of a print-out of the various documented dress code incidents at Sierra High School in the last

15  6 years. These have included students wearing items of clothing or other apparel that revealed too

16  much skin, stated "I love boobies" in reference to breast cancer support, referenced drugs, alcohol

17  or violence, or were gang-related. All of these types of violations were by both male and female

18  students. Specifically related to sexual orientation, we have documented a student, for example,

19  who wore a t-shirt that said "I like girls who kiss girls." Like T.V., that student was asked to change

20  shirts. Another student was documented for wearing a shirt stating "Just Do You," as it was

21  interpreted by school staff as being sexual in nature. A third student was asked to change his shirt

22  that read "I am a heterosexual." That incident was not formally documented. Principal Steve Clark,

23  who spoke with that student, informed me of the incident. Although there have been many, many

24  more dress code violations related to, for example, drugs, alcohol, and gangs, than related to sexual

25  orientation, shirts regarding sexual orientation are considered, and have been, disruptive to the

26  school environment and are not allowed under the dress code, regardless of how infrequently

27  students wear such items.

28      13.    The school dress code is the Dress and Grooming Policy promulgated by the

1  Manteca Unified School District, and reads:

2  > Clothing, accessories, and jewelry shall be free of writing, pictures, symbols or
3  > other insignia, which are crude vulgar, profane, obscene, libelous, slanderous, or
   > sexually suggestive. Clothing that degrade[s] any cultural, religious or ethnic
   > values or which advocate racial, ethnic, or religious prejudice or discrimination,
4  > or which promote sex, the use of tobacco, drugs, or alcohol or any unlawful acts
   > are prohibited.

5

6      A true and correct copy of the District's dress code policy is attached hereto as Exhibit D.

7  The dress code is, in part, protects the physical and emotional safety of the students by creating a

8  safe learning environment. As school administrators, we have an obligation to afford all students

9  the same rights and protections. In a high school environment, a t-shirt that states "Nobody knows

10  I'm a lesbian" could have a connotation of being "sexually suggestive" as prohibited by the dress

11  code, just like a t-shirt that states "I like girls who kiss girls" or "Just Do You" is sexually

12  suggestive. A t-shirt does not have to blatantly refer to, or depict, sex in order to be prohibited by

13  the dress code. Promoting one's sexuality can cause a disruption. Further, the code prohibits

14  clothing that degrades cultural or religious values. Just as T.V. has a right to express her sexuality,

15  so too must the Sierra High School administrators including myself, protect the rights of  students

16  and faculty whose cultural or religious values could be offended by any expression of sexuality. As

17  T.V. seeks to have her rights protected, so too is the school responsible for ensuring that all other

18  students' and the faculties' rights are not infringed upon, including the right to be left alone and not

19  be confronted with material they may deem offensive. Similarly, the dress code prohibits clothing

20  that advocates religious prejudice or discrimination. Again, the school administrators, including me,

21  must be mindful of the fact that some expressions, such as T.V.'s shirt stating "Nobody knows I'm

22  a lesbian" or a t-shirt stating "I like girls who kiss girls" might be considered prejudicial or

23  discriminatory to people whose religion does not advocate LGBT relationships. The staff absolutely

24  cannot choose sides and determine that one group can express themselves to the detriment, or loss

25  of rights, of another group. For these reasons, all t-shirts or other clothing that might infringe on any

26  groups' religious beliefs or in any way may lead to an implication of sex or sexuality, are

27  prohibited.

28      14.     This prohibition is required because such expressions will cause disruptions at the

5

DECLARATION OF GREG LELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    school site. For example, T.V.'s own t-shirt caused a significant disruption. It resulted in Mr.

2    Hammarstrom having to suspend his preparation or teaching on two occasions; his substitute

3    teacher had to report conversations between T.V. and "Emily" to Mr. Hammarstrom; I had multiple

4    phone calls with T.V. and her family and three meetings with her regarding her t-shirt. I had two

5    meetings with "Emily." We expended time and staff resources to change T.V.'s school schedule.

6    This one t-shirt required me to take significant time from my ordinary administrative duties to

7    address the fall-out among staff, students and T.V.'s family, after T.V. wore it to school. There had

8    been no prior, similar issues with these students.

9          15.    Part of the education inherent in the high school curriculum is learning to interact

10   with one's peers in a respectful manner. The health, safety, and ability of every high school student

11   to learn are of the utmost importance at Sierra High School. A school is not a "public forum" in

12   which students can completely and freely express themselves. Allowing students to communicate

13   anything they felt like would not be conducive to the overall goal of the school, which is education.

14   The school has an obligation to take the rights and freedoms of every person on campus into

15   consideration, whether a student, faculty or staff member, or parent or visitor. As such, some

16   students' expression must be limited at times to ensure a safe learning environment for all.

17         16.    Not every dress code violation is always documented. For example, in some cases, if

18   it is the student's first infraction, we will ask them to remove the item of clothing, but will not

19   record the incident, as we did with T.V. T.V. was never disciplined for wearing her t-shirt.

20         17.    There is no way for the dress code to specifically identify every potential violation.

21   School personnel must interpret, to the best of their ability, the dress code policy as it relates to

22   individual students' apparel.

23         18.    Sierra High School has a Gay-Straight Alliance Club. Like many clubs on campus, it

24   has a school-approved Club shirt, stating "BElieve in YOUrself." This t-shirt was approved because

25   it does not specifically reference any sexuality. Rather, through the capitalization, it encourages

26   each student to "be you." Students can neutrally express their membership in the club, or support of

27   LGBT issues, with a shirt that does not incite any particular feeling, or even aggression, toward any

28   group. Attached hereto as Exhibit E is a true and correct copy of a photograph of the school's

1    approved Gay-Straight Alliance Club t-shirt.

2         19.    T.V. has come to me for a number of issues since the start of the 2015-2016 school

3    year, unrelated to her t-shirt, which we have successfully addressed together. On November 11,

4    2015, T.V. completed a Witness to Incident Form and provided it to me. I discussed that incident

5    with her but, in order to protect her anonymity regarding that concern, as she requested, it is not

6    attached here.

7         20.    On January 14, 2016, I received a copy of the Government Tort Claim issued by

8    T.V. I had not previously been informed that a student stated "gay contribute nothing to society"

9    loud enough for T.V. to hear, that a student stated that she refused to share a hotel room with T.V.

10   because she was not comfortable sharing a room with a lesbian, that T.V. saw and heard two

11   students refer to a transgender student in a pejorative way, or that 3-10 students threw crackers at

12   T.V. while making negative comments toward her. I began investigating these issues the next day,

13   January 15. I cannot investigate or otherwise take action regarding incidents that I am not told have

14   occurred. A true and correct copy of the Government Tort Claim and received, and on which I

15   based my investigations, is attached hereto as Exhibit F.

16        21.    Attached hereto as Exhibit G is a true and correct copy of my Responses to Special

17   Interrogatories, Sets One and Two, prepared in response to Plaintiff's propounded discovery.

18        I declare under penalty of perjury under the laws of the State of California that the foregoing

19   is true and correct.

20        Executed this 26th day of January, 2016 at Manteca, California.

21

22              _____/s/ Greg Leland_____
                GREG LELAND

23

24

25

26

27

28

DECLARATION OF GREG LELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

# EXHIBIT A

*Change resulting from "Dress code" issue w/ 2nd & 3rd periods.

SS,
8-13-15

**Greg Leland**

*Other students in 2nd period make her feel uncomfortable.

Hammer, Buleo, Dad, Steve, Victor, V.P. Leland, Taylor

**From:** Greg Leland
**Sent:** Thursday, August 13, 2015 1:47 PM
**To:** Greg Leland
**Subject:** (Emily -)

Sent from Snipping Tool

*Referred to VCC

## Student Profile

Sierra High School - SHS 15/16

| Student Name | Local ID | Programs | Gender | Birth Date | Grade | Status | Entry | Exit |
|---|---|---|---|---|---|---|---|---|
| Taylor Victor | 181001382 | 127 | Female | 3/8/1999 | 11 | A | 8/3/2015 | |

Student 1298 of 1370   ☐ Include Inactive

**Menu | Favorites | MassEntry | Student | Home**

🔍 Suggested Sites ▾  🗎 ACT  🗎 Student Profile  📄 CIF  📊 DataDirector  🗎 Document Center  🔳 Google  🔳 Q Aequit

- Demographics
- Contacts
- Enrollment
- Pulse
- Programs
- Schedule
- Attendance
- Marks
- Transcript
- GradReq
- Requests
- GPA
- Assignments
- Tests
- Behavior
- Health
- Visits
- Activities
- Nutrition Services
- SBA
- Extended Profile
- 🖨 Print Profile
- ⚙ Configure Menu

| Class | Teacher | Pd | Room |
|---|---|---|---|
| U.S. History | Busch, W | 1 | 37 |
| Music Theory and Composition | Hammarstrom Jr, R | 2 | 64 |
| Advanced Band | Hammarstrom Jr, R | 3 | 64 |

### Programs

| Program | Entry Date | Exit Date |
|---|---|---|
| GATE | 08/08/2013 | |

### Schedule

| Period | Days | Term | Course Code | Course |
|---|---|---|---|---|
| 1 | | S1 | 1610-1 | U.S. History |
| 2 | | S1 | 6340-1 | Music Theory and Composition |
| 3 | | S1 | 6320-1 | Advanced Band |
| 4 | | S1 | 3250-4 | Chemistry |

### Attendance

**Attendance Summary by Reason**

Attendance Item
On Campus
Truant/Unexcused Reason

**Attendance Summary by Class**

| Period ↑ | Term | Course | Teac... |
|---|---|---|---|
| 1 | S1 | U.S. History | Busc... |
| 2 | S1 | Music Theory and Composition | Ham... |
| 3 | S1 | Advanced Band | Ham... |
| 4 | S1 | Chemistry | Unte... |

**Attendance Detail**

| Date ↓ | Period | Attendance | Course |
|---|---|---|---|
| 8/13/2015 | 2 | On Campus | 6340-1 Musi... |
| 8/13/2015 | 3 | On Campus | 6320-1 Adva... |
| 8/12/2015 | 3 | On Campus | 6320-1 Adva... |

*Very positive mtg. Both Dad & Taylor agreed that she could not wear the shirt again.

DAD - "I wish everyone could just go to school and leave all this other stuff out."

We
* Did not change our story!

~~Warning~~ Warning only - No Dress Code issue
(was not recorded)

We don't allow

Heterosexual                          — Both Dad & Taylor
Pro-Life                                  like Mr. Hammerstrom
Pro-Choice                            "Favorite teacher"
Derogatory toward President

— Dad Said "Any other
teacher, he could have
come straight to Admin."

BEUK 00073

EXHIBIT B

**Greg Leland**

| | |
|---|---|
| **From:** | Greg Leland <gleland@musd.net> |
| **Sent:** | Monday, August 24, 2015 7:36 AM |
| **To:** | Dan Beukelman |
| **Subject:** | RE: taylor victor wants you to call her up before second period |

Okay, I'll call her up.

**Greg Leland**
**Vice Principal**
**Sierra High School**
**1700 Thomas Street**
**Manteca CA 95337**
**(209) 858-7410, ext. 57417**



# Showcase School

**From:** Dan Beukelman
**Sent:** Monday, August 24, 2015 7:35 AM
**To:** Greg Leland <gleland@musd.net>
**Subject:** RE: taylor victor wants you to call her up before second period

Something about Emily still talking.

**From:** Greg Leland
**Sent:** Monday, August 24, 2015 7:33 AM
**To:** Dan Beukelman <dbeukelman@musd.net>
**Subject:** RE: taylor victor wants you to call her up before second period

Do you know why?

**Greg Leland**
**Vice Principal**
**Sierra High School**
**1700 Thomas Street**
**Manteca CA 95337**
**(209) 858-7410, ext. 57417**



# Showcase School

**From:** Dan Beukelman
**Sent:** Monday, August 24, 2015 7:32 AM

1

**To:** Greg Leland <gleland@musd.net>
**Subject:** taylor victor wants you to call her up before second period


Dan Beukelman
Assistant Principal
Sierra High School
209-858-7410
dbeukelman@musd.net

 Microsoft

Showcase School

2

# EXHIBIT C

EXHIBIT C FILED SEPARATLEY AS:


EXHIBIT C TO THE

DECLARATION OF GREG LELAND

EXHIBIT D

# ADMINISTRATIVE REGULATION   NO. 5132 (a)

## MANTECA UNIFIED
## SCHOOL DISTRICT

# DRESS AND GROOMING

In cooperation with teachers, pupils and parents/guardians, the principal or designee shall establish rules governing pupil dress and grooming, which are consistent with district policy and regulations.  These school dress codes shall be regularly reviewed.

1)  Shoes must be worn at all times.  Open toe sandals with a back strap may be worn. Policies/programs may be established for instructional programs requiring closed toe shoes such as PE, ROP/Career & Technical, and Science.

2)  Clothing, grooming, accessories, and jewelry shall be free of writing, pictures, symbols, or other insignia, which are crude, vulgar, profane, obscene, libelous, slanderous, or sexually suggestive.  Clothing that degrade any cultural, religious or ethnic values or which advocate racial, ethnic, or religious prejudice or discrimination, or which promote sex, the use of tobacco, drugs, or alcohol or any unlawful acts are prohibited.

3)  Clothes shall be sufficient to conceal undergarments at all times. Pants should be sized to fit the waist in order not to sag.  Sagging pants are those that do not fit the student's waistline.  Pants should not need a belt to hold them up. See through or fishnet fabrics, halter tops, off the shoulder or low cut tops, bare midriffs and skirts or shorts shorter than mid-thigh and other like garments are prohibited.

4)  Hair shall be clean and neatly groomed.  Hair may not be sprayed by any coloring that would drip when wet.

5)  The principal, staff, students, and parent/guardians at each school may establish reasonable dress and grooming regulations for times when students are engaged in extracurricular or other special school activities.

6)  At individual schools that have a dress code prohibiting gang-related apparel at school or school activities, the principal, staff and parents/guardians participating in the development of the school safety plan shall define "gang-related apparel" and shall limit this definition to apparel that reasonably could be determined to threaten the health and safety of the school environment if it were worn or displayed on a school campus.

# ADMINISTRATIVE REGULATION   NO. 5132 (b)

MANTECA UNIFIED
SCHOOL DISTRICT

7)  No clothing or articles of clothing (including but not limited to gloves, bandannas, shoestrings, wristbands, belts, jewelry) related to group or gang which may provoke others to acts of violence for example, belt buckles with initials or red, blue, or brown web belts, belts hanging out of pants, red, blue, or other colored shoelaces, bandanas of any type of color, either worn in hair or displayed in clothing, gloves, towels or other items hanging from rear pants pockets or from belt; excessive clothing items of predominately one color, old English style writing on clothing or notebooks.

8)  Because gang-related symbols are constantly changing, definitions of gang-related apparel may be reviewed and updated whenever related information is received by administrator and/or school safety committee.

9)  Any clothing, apparel, or attire which could be used as a weapon, or could be damaging to school property, included but not limited to steel-toed boots, chain, items with spikes or studs, etc., are prohibited.

10) Students may wear district approved hats or other sun protective clothing outdoors during the school day to provide protection from the sun and/or cold weather as reasonably appropriate.

11) The approved hats that students are allowed to wear must meet the following criteria: full brim (around the entire hat) with a width of 1.5-4 inches, straw or cloth, white, off white, tan, gray or black. School approved baseball caps and beanies are permitted, with a home school logo (without other added design or writing). Baseball caps must be worn in such a manner as to provide protection from the sun facing forward. All hats and beanies may only be worn while outside the school buildings.  Solid color beanies without any logo may be worn for protection against cold weather in white, off-white, tan, gray or black.

Date Established:     April 23, 2002
Revised:              August 1, 2013

# EXHIBIT E



EXHIBIT F



January 14, 2016

**Via Email, Certified U.S. Mail, Return Receipt Requested**

Alison W. Winter
Spinelli, Donald & Nott
A Professional Corporation
815 S Street, Second Floor
Sacramento, CA  95811

Re: <u>Claims under Cal. Gov't Code §§ 900 *et seq.* and
ongoing harassment and censorship of Taylor Victor</u>

Dear Ms. Winter,

It is our understanding that your firm represents the Manteca Unified School District and its
school officials, including Sierra High School officials Dan Beukelman, Greg Leland, and Steve
Clark (collectively, "the District").  If this is incorrect, please notify us immediately.

As counsel to the District, you are hereby notified pursuant to California Government Code §§
900 *et seq.* that Taylor Victor and Heather Victor (hereinafter "Claimants"), whose address is
1644 East Louise Avenue, Lathrop, California 95330, claim damages from the District.

This claim is based on injuries suffered by Claimants from incidents on August 10, 2015 through
August 13, during which Mr. Beukelman and Mr. Leland—with the approval of Mr. Clark—
prohibited Taylor Victor from exercising her rights under federal and state law to wear a t-shirt
to Sierra High School that states in whole, "Nobody knows I'm a lesbian."  The facts of those
incidents are set out in detail in the Complaint filed on or about October 15 in *T.V. v. Beukelman*,
Case No. 2:15-CV-02163-JAM-CKD.  We refer you to the Complaint, which was served upon
your clients in October, for a description of those facts.

The United States Constitution, the California Constitution, and the California Education Code
prohibit this type of censorship of public school students. The message on Ms. Victor's shirt,
"Nobody knows I'm a lesbian," is an example of the most fundamental type of speech that the First
Amendment protects.  By wearing the shirt, Ms. Victor wishes to publicly, silently and peacefully
articulate her sexual orientation and her beliefs on sexual orientation and equal rights.  Her
expressive act did not "materially and substantially disrupt the work and discipline of the school"
and thus cannot lawfully be censored.  *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S.
503, 513 (1969); *see also J.C. ex rel. R.C. v. Beverly Hills Unified Sch. Dist.*, 711 F. Supp. 2d

1

1094, 1111 (C.D. Cal. 2010) (noting that the "decision to discipline speech must be supported by the existence of *specific facts* that could reasonably lead school officials to forecast disruption") (emphasis in original). Moreover, the expression of a public school student's sexual orientation and views about the rights of lesbian, gay, bisexual and transgender ("LGBT") people is entirely appropriate at school. Courts around the country have consistently held that the expression of a student's LGBT identity is "pure speech" that is appropriate and protected at school. *See, e.g.*, *McMillen v. Itawamba County Sch. Dist.*, 702 F. Supp. 2d 699, 705 (N.D. Miss. 2010) (holding that bringing a same-sex date to the prom is "the type of speech that falls squarely within the purview of the First Amendment"); *Gillman ex rel. Gillman v. Sch. Bd. for Holmes County, Florida*, 567 F. Supp. 2d 1359, 1374–75 (N.D. Fla. 2008) (rejecting school district's contention that speech about LGBT issues was inappropriate for middle school or high school students); *Henkle v. Gregory*, 150 F. Supp. 2d 1067 (D. Nev. 2001) (holding that a high school student stated a claim for violation of his First Amendment right to speech when he alleged that school officials prevented him from openly stating he is gay and retaliated against him for doing so).

The injury arising from the District's refusal to allow Ms. Victor to exercise her First Amendment right to wear her t-shirt stating "Nobody knows I'm a lesbian" to Sierra High School is a continuing injury, because the District continues to refuse to allow Ms. Victor to wear the t-shirt at issue. Indeed, Defendants Dan Beukelman and Greg Leland admit in their Answer, filed on November 10 in *T.V. v. Beukelman*, Case No. 2:15-CV-02163-JAM-CKD, that Ms. Victor continues to be prohibited from wearing her t-shirt stating, "Nobody knows I'm a lesbian." "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted); *Garcia v. Google, Inc.*, 786 F.3d 727, 732 (9th Cir. 2015).

Additionally, you and your clients are hereby notified that Ms. Victor has suffered and continues to suffer from harassment on the basis of her sexual orientation at Sierra High School through the continuous period from August 10, 2015 to the date of presentation of this claim, which were sustained under the following circumstances:

> Ms. Victor identifies as a lesbian. On August 10, Ms. Victor wore a t-shirt stating "Nobody knows I'm a lesbian" to Sierra High School, where she is a student, to express her social and political viewpoint that there is nothing to be ashamed of in being a lesbian, and that LGBT students should be proud of who they are.

> On August 10, Mr. Beukelman and Mr. Leland demanded that T.V. change her shirt, declaring on that day and in the following days that the shirt is impermissible under the school district dress code because of its message in support of LGBT rights, which they claim is disruptive, impermissibly displayed "sexuality" and Ms. Victor's "personal choices and beliefs," "an open invitation to sex," and was possibly "gang related." These purported reasons why Ms. Victor cannot wear her t-shirt betray a negative and intolerant attitude about LGBT sexual orientation and equal rights on the part of Mr. Beukelman and Mr. Leland, and impermissibly silence Ms. Victor's support for equal rights for

2

LGBT students. Ms. Victor was forced to go home in the middle of the school day on August 10 because Mr. Beukelman and Mr. Leland demanded that she change her t-shirt; thus, she also missed important academic class time that day. Although Mr. Beukelman and Mr. Leland claim that Ms. Victor's t-shirt violates the dress code because of its message, neither they nor any other school staff have ever provided Ms. Victor or her parents with any notification of disciplinary action. Because the Sierra High School and Manteca Unified School District handbooks list willful defiance as grounds for suspension or expulsion, Ms. Victor also continues to fear that she will be disciplined for violating Mr. Beukelman and Mr. Leland's unlawful directives or retaliated against for advocating for her free speech rights as an LGBT student.

On August 10, during her third-period class, Ms. Victor was sent to the Sierra High School main office for discipline by Mr. Hammarstrom, her teacher, because of the message on her t-shirt. Ms. Victor was singled out by Mr. Hammarstrom for discipline because of the message on her t-shirt that advocates for LGBT rights. Every student in the class watched Mr. Hammarstrom send Ms. Victor to the main office for discipline. Ms. Victor felt humiliated and denigrated by the experience.

Around August 10, after Ms. Victor was disciplined for wearing her t-shirt stating "Nobody knows I'm a lesbian," a student in Ms. Victor's second-period class told Ms. Victor that she "is sinning" because she is a lesbian.

In October or early November 2015, Ms. Victor heard a student sitting adjacent to her during her first period class say, loud enough for her to hear him clearly, words to the effect of "gays contribute nothing to society." Around the same time, but on a separate occasion, the same student said, in a voice loud enough for Ms. Victor to hear him, words to the effect of "we should stick all of the gays and the Mexicans in concentration camps and kill them."

Ms. Victor's band class, which is taught by Mr. Hammarstrom, is planning to make a school trip to Disneyland in Spring 2016. All of the students have been told that they must share hotel rooms with students of the same gender. Recently, another student in Ms. Victor's band class said, in a voice loud enough for Ms. Victor to hear her clearly, that she refuses to share a hotel room with anyone who is gay because she's "not comfortable sharing a room with a lesbian."

On another occasion in Fall 2015, Ms. Victor saw and heard two students (a boy and a girl) just outside of her band classroom refer to a transgender student in a pejorative way as a "he-she" and "disgusting" because of the transgender student's gender identity. The female student then tore down a poster for the Current Events club, an extracurricular club founded by the transgender student, and the male student spit on it.

The harassment of Ms. Victor based on her sexual orientation, and based on her bringing a lawsuit to vindicate her free speech rights as an LGBT student, has continued to

3

escalate.  On December 19, on the school bus returning from a school band trip to Chowchilla, a group of 3-10 students on the bus threw crackers and other snack foods at Ms. Victor while directing comments to her to the effect of that Ms. Victor should be excluded from band class, that Ms. Victor is a disgrace to the school, and that the lawsuit she brought in order to be able to wear her t-shirt is "stupid."  This harassment continued for approximately 10-15 minutes.

Although Ms. Victor would ordinarily respond to this harassment by reporting it to her teacher or to high school administrators such as Mr. Beukelman or Mr. Leland, she has not felt safe to do so in this case, because band teacher Mr. Hammarstrom, Assistant Principal Beukelman, Vice Principal Leland, and Principal Clark all participated in the harassment of her when she wore her t-shirt in support of LGBT student rights, as articulated in Ms. Victor's Complaint in *T.V. v. Beukelman*.  Ms. Victor reasonably feels that it would be ineffective at best, or potentially subject her to further harassment, if she reported the harassment based on her sexual orientation to any of those people; and she does not know who at Sierra High School she can notify about the harassment without putting her emotional and physical safety further at risk.

The above-described harassment is greatly upsetting to Ms. Victor because she feels devalued and unprotected from verbal and physical harassment from students and staff at Sierra High School based on her identity as an LGBT student.  The harassment is also greatly distressing to Heather Victor, Ms. Victor's mother, because she feels that her daughter is not safe from gender-based harassment by other students and staff at Sierra High School.

The injuries sustained by Claimants, as far as known, as of the date of the presentation of this claim, consist of negligent and intentional infliction of emotional and psychological distress caused by the violations of Claimants' rights described above, loss of educational opportunities and rights, lost wages, and other costs associated with attempting to address the Defendants' failure to comply with various legal duties.  The amount claimed exceeds $10,000 and constitutes an unlimited civil case.

As you are no doubt aware, school officials have an affirmative obligation under state and federal law to make reasonable efforts in response to gender-based harassment of students, including harassment on the basis of sexual orientation.  *See, e.g.,* California Education Code §§ 200, 220; *Davis v. Monroe Bd. of Educ.*, 526 U.S. 629 (1999); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134-35 (9th Cir. 2003); *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1117 (E.D. Cal. 2011)  You and your clients are hereby formally notified that Ms. Victor is being consistently harassed at Sierra High School based on her identity as a lesbian student.

///

///

4

Please call me at your earliest convenience so that we can discuss what steps your clients are taking to protect Ms. Victor from this alarming harassment and to ensure her physical safety and emotional well-being while she is attending Sierra High School.

Sincerely,

Linnea Nelson
Education Equity Staff Attorney

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
SAN FRANCISCO OFFICE: 39 DRUMM STREET, SAN FRANCISCO, CA 94111 | TEL/415.621.2493
FRESNO OFFICE: P.O. BOX 188, FRESNO, CA 93707 | TEL/559.554.2994
FAX/415.255.1478 | TTY/415.863.7832 | WWW.ACLUNC.ORG

EXHIBIT G

1  **SPINELLI, DONALD & NOTT**
   A Professional Corporation
2  Domenic D. Spinelli, SBN 131192
   Alison W. Winter, SBN 251084
3  815 S Street, Second Floor
   Sacramento, CA 95811
4  Telephone: (916) 448-7888
   Facsimile: (916) 448-6888
5  Email: DomenicS@SDNLaw.com

6  Attorneys for Defendants,
   DAN BEUKELMAN, Assistant Principal
7  of Sierra High School, and GREG LELAND,
   Vice Principal of Sierra High School

8

9              **UNITED STATES DISTRICT COURT**

10             **EASTERN DISTRICT OF CALIFORNIA**

11

12  T.V., through next friend and mother          Case No. 2:15-CV-02163-JAM-CKD
    HEATHER VICTOR,
13                                                **DEFENDANT GREG LELAND'S**
                Plaintiffs,                       **RESPONSE TO PLAINTIFF'S SPECIAL**
14                                                **INTERROGATORIES, SET TWO**
         vs.
15                                                Complaint Filed: October 15, 2015
    DAN BEUKELMAN, Assistant Principal of         Trial Date: February 6, 2017
16  Sierra High School; GREG LELAND, VICE
    PRINCIPAL OF SIERRA HIGH SCHOOL,
17
                Defendants.
18
19  **PROPOUNDING PARTY:**        **Plaintiff T.V.**

20  **RESPONDING PARTY:**         **Defendant Greg Leland**

21  **SET NUMBER:**               **Two (2)**

22       Defendants DAN BEUKELMAN and GREG LELAND (hereinafter "DEFENDANTS")

23  through undersigned counsel, responds and objects to Plaintiff T.V.'s Special Interrogatories, as

24  follows.

25       The following responses to Interrogatories are answered in the manner and form required by

26  the Federal Rules of Civil Procedure Rule 26 and 33.

27  ///

28  ///

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 3:**

State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION violates the dress code that applies to students at Sierra High School.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to, and without waiving said objections, or any objections, Defendant responds as follows: The "school dress code" at Sierra High School is the Manteca Unified School District dress code. Enforcement of the dress code is critical because the school has an obligation to provide and safe learning environment for all of its students. Part of a high schooler's education is learning to control his or her impulses, hormones and emotions while still expressing his or her developing personality. Each student must learn to respectfully state his or her opinions without excessively offending or censoring their peers. Students do not have the same right to freedom of speech that they would enjoy outside of the school campus. Allowing students to communicate anything they want at any time, may lead to inappropriate, offensive and distracting speech. To that end, the District's dress code prohibits communications through apparel that are sexually suggestive, degrade religious or ethnic values, or which advocates religious prejudice or discrimination. The dress code states:

> Clothing, accessories, and jewelry shall be free of writing, pictures, symbols or other insignia, which are crude vulgar, profane, obscene, libelous, slanderous, or sexually suggestive. Clothing that degrade[s] any cultural, religious or ethnic values or which advocate racial, ethnic, or religious prejudice or discrimination, or which promote sex, the use of tobacco, drugs, or alcohol or any unlawful acts are prohibited.

In the past six years, there have been approximately 2,530 documented dress code violations at the high school. These have included students wearing items of clothing or other apparel that revealed too much skin, stated "I love boobies" in reference to breast cancer support, referenced drugs, alcohol or violence, or were gang-related. All of these types of violations were by both male and female students. T.V.'s t-shirt stating "Nobody knows I'm a lesbian" has sexual connotations with high school students. Just like a t-shirt stating "I like girls who kiss girls" presents an added

1   sexual component to the communication, the shirt stating that a student is a lesbian brings the shirt a

2   step closer to a more sexual communication. Another student was documented for wearing a shirt

3   stating "Just Do You," as it was interpreted by school staff as being sexual in nature and relating to

4   self-gratification. T.V.'s t-shirt stating "Nobody knows I'm a lesbian" is not a content-neutral

5   expression of LGBT support, such as the school's Gay-Straight Alliance t-shirt stating "BElieve in

6   YOUrself," which does not specifically reference any sexuality.

7        Further, the school has an obligation to protect the rights and freedoms of T.V. as well as

8   every other person on campus. Among those rights is the right to be left alone and have a school

9   environment that is free from distraction and disruption. Some students found T.V.'s t-shirt to be

10   offensive and would prefer not to be confronted with T.V.'s shirt while at school. T.V. does not

11   have a greater freedom to wear her t-shirt than other students have to not be confronted by shirts

12   such as hers that they find unpleasant. To the extent that the offense at the shirt is grounded in an

13   individual's religion, T.V.'s t-shirt violates the dress code because it degrades those students'

14   religious values or belief that homosexuality is improper. Importantly, the administration is not

15   stating or implying that LGBT rights are not valid, important and sensitive. However, as neutral

16   administrators, they are simply unable to allow T.V.'s expression regarding LGBT issues to take

17   priority over other students' freedoms and opinions. No individual's freedom of expression or

18   speech – or their freedom to be free from a distracting environment at school – can be elevated over

19   another's. The school has the authority to limit its students' speech when appropriate and here, the

20   administration has determined that expressions of sexuality or sexual orientation are not appropriate

21   for school.

22

23   DATED: January 22, 2016                **SPINELLI, DONALD & NOTT**

24

25                 By:_____

26                    DOMENIC D. SPINELLI

27                    ALISON W. WINTER
                 Attorneys for Defendants,
                 **DAN BEUKELMAN and GREG LELAND**

28

Case: *T.V. v. Beukelman*
Eastern District of California Case No.:   2:15-cv-02163-JAM-CKD

## VERIFICATION

The undersigned hereby asserts as follows:

I am a party to the above-entitled proceeding. The matters contained in the foregoing

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET**

**TWO,** are true of my own knowledge, except as to the matters therein stated on information and

belief, and as to those matters I believe them to be true.  I declare under penalty of perjury under the

laws of the State of California that the foregoing is true and correct.

Executed on _____1/21_____, 2016, at ___Manteca___, California.

GREG LELAND
Vice Principal of Sierra High School

INELLI, DONALD &
NOTT

**PROOF OF SERVICE**

COURT:                United States District Court, Eastern District of California
CASE NO.:             2:15-cv-02163-JAM-CKD
CASE NAME:            *T.V. v. Dan Beukelman and Greg Leland*

I am a citizen of the United States, employed in the County of Sacramento, State of California.  My business address is 815 S Street, Second Floor, Sacramento, CA 95811.  I am over the age of 18 and not a party to the above-entitled action.

I am readily familiar with Spinelli, Donald & Nott's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle.  Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business.  (Code Civ. Proc., § 1013a(3) or Fed.R.Civ.P.5(a) and 4.1.)

On January 22, 2016, I caused the within **DEFENDANT GREG LELAND'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO**, the original of which was produced on recycled paper, to be served via

☒   MAIL--
Placed in the United States Mail at Sacramento, California in an envelope with postage thereon fully prepaid addressed as follows:
**PLEASE SEE ATTACHED SERVICE LIST**

☐   BY ELECTRONIC SERVICE--
I caused such document to be electronically served by filing said document electronically in accordance with rules of electronically filing documents. See Local Rule 5-135(a); Fed. R. Civ. P. 5(b)(2)(D).

☐   FAX AND MAIL--
I personally sent to the addressee's telecopier number indicated below a true copy of the above-described document(s) before 5:00 p.m.  I verified transmission without error by a transmission report issued by the facsimile machine upon which said transmission was made immediately following the transmission.   Thereafter, I placed a true copy in a sealed envelope with the first class postage affixed and mailed as follows:

☐   PERSONAL SERVICE--
By causing delivery by hand to the addressee addressed as follows:

☐   FEDERAL EXPRESS--
By causing delivery by Federal Express of the document(s) listed above to the person(s) at the address(es) set forth below:

PINELLI, DONALD
& NOTT

1

1    I declare under penalty of perjury under the laws of the State of California that the foregoing
2  is true and correct.  Executed on January 22, 2016, at Sacramento, California.

3

4                                                         Jessica Patton

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PINELLI, DONALD
& NOTT

2

1

## SERVICE LIST

2

COURT:               United States District Court, Eastern District of California

3

CASE NO.:            2:15-cv-02163-JAM-CKD

CASE NAME:           *T.V. v. Dan Beukelman and Greg Leland*

4

| | |
|---|---|
| American Civil Liberties Union Foundation of Northern California, Inc.<br>Christine P. Sun<br>Linnea L. Nelson<br>Julia Harumi Mass<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: (415) 621-2493<br>Facsimile: (415) 255-1478<br>Email: csun@aclunc.org<br>　　　　lnelson@aclunc.org<br>　　　　jmass@aclunc.org | Attorneys for Plaintiff<br>*T.V. through her next friend and mother,*<br>*Heather Victor* |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PINELLI, DONALD
& NOTT

1  **SPINELLI, DONALD & NOTT**
   A Professional Corporation
2  Domenic D. Spinelli, SBN 131192
   Alison W. Winter, SBN 251084
3  815 S Street, Second Floor
   Sacramento, CA 95811
4  Telephone: (916) 448-7888
   Facsimile:  (916) 448-6888
5  Email: DomenicS@SDNLaw.com

6  Attorneys for Defendants,
   **DAN BEUKELMAN, Assistant Principal**
7  **of Sierra High School, and GREG LELAND,**
   **Vice Principal of Sierra High School**

8

9              **UNITED STATES DISTRICT COURT**

10            **EASTERN DISTRICT OF CALIFORNIA**

11

12  | T.V., through next friend and mother | Case No. 2:15-CV-02163-JAM-CKD |
    | HEATHER VICTOR, | |

13  | | **DEFENDANT GREG LELAND'S** |
    | Plaintiffs, | **RESPONSE TO PLAINTIFF'S SPECIAL** |
14  | | **INTERROGATORIES, SET ONE** |
    | vs. | |
15  | | Complaint Filed: October 15, 2015 |
    | DAN BEUKELMAN, Assistant Principal of | Trial Date: February 6, 2017 |
16  | Sierra High School; GREG LELAND, VICE | |
    | PRINCIPAL OF SIERRA HIGH SCHOOL, | |
17  | | |
    | Defendants. | |
18

    **PROPOUNDING PARTY:**          **Plaintiff T.V.**
19
    **RESPONDING PARTY:**          **Defendants Greg Leland**
20
    **SET NUMBER:**          **One (1)**
21
22        Defendant GREG LELAND (hereinafter "DEFENDANTS") through undersigned counsel,

23  responds and objects to Plaintiff T.V.'s Special Interrogatories, as follows.

24        The following responses to Interrogatories are answered in the manner and form required by

25  the Federal Rules of Civil Procedure Rule 26 and 33.

26  ///

27  ///

28  ///

**SPECIAL INTERROGATORIES**

**SPECIAL INTERROGATORY NO. 1:**

State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION is disruptive.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to, and without waiving said objections, or any objections, Defendant responds as follows: On August 10, 2015, I received an email from music/band teacher Rick Hammarstrom that inquired as to whether a shirt with large print stating "Nobody knows I'm a lesbian" was appropriate for school. I told him that, based on past practice, such a t-shirt would not be allowed because it could lead to disruption in a classroom or on school grounds. I asked Mr. Hammarstrom to send T.V. to the office but he replied that he did not want T.V. to know that he was the teacher who reported the shirt. After second period that same day, I sent a campus monitor to send T.V. to the office. As T.V. had a conversation with Secretary Vi Anderson, I approached her and told her that she could not wear her t-shirt because it was a school disruption and, based on past practices, the school has not allowed t-shirts that express sexuality or sexual preference to be worn on campus. The school has t-shirts in the office that students can wear if their own shirts violate the dress code. T.V. refused to wear one of the school's shirts and instead went home. She was not disciplined in any way, including given detention or a suspension.

Later that morning, T.V.'s father called me. We discussed the reasons why the shirt was not appropriate for school and he agreed with me, assuring me that T.V. would not wear the shirt again. T.V.'s father also told me he was upset that Mr. Hammarstrom had made some comments about religion in his class, stating "if she can't wear her shirt, Hammar[strom] can't talk about religion." I agreed that if religion is not part of the curriculum, it should not be discussed in class. That same day, I received a message from T.V., indicating that she wanted to discuss the T-shirt further. The next day, August 11, I met with T.V. regarding the dress code policy. T.V. began arguing with me when I told her I was following the District's policy regarding the dress code. I suggested that she speak with Mr. Beukelman and walked her over to Mr. Beukelman's office. I met with T.V. again

1  on August 12, 2015. T.V. told me that she had had a conversation with Mr. Hammarstrom earlier

2  that day that had upset her. She wanted to transfer out of his Music Theory and Composition class,

3  but remain in the other class she had with Mr. Hammarstrom. The next day, I met with Mr.

4  Beukelman, Mr. Hammarstrom, T.V., and her father to discuss a change of schedule so that T.V.

5  would no longer have to be in Mr. Hammarstrom's classroom. During that meeting, T.V. told us

6  that she felt uncomfortable because other students had discussed religion and homosexuality in

7  front of her. Also during the August 13 meeting, both T.V. and her father indicated how much they

8  liked Mr. Hammarstrom; T.V. indicated he was her favorite teacher. She stated that she would not

9  wear her t-shirt anymore because she respected Mr. Hammarstrom and did not want to upset him.

10 She agreed to stay enrolled in both of Mr. Hammarstrom's classes at that point. On August 10 and

11 August 13, T.V. mentioned that she wore the t-shirt specifically to see what reaction she would get

12 from Mr. Hammarstrom. After the August 12 meeting, Mr. Hammarstrom and I spoke to "Emily,"

13 the student who had made statements regarding religion and sexuality in front of T.V. We told her

14 that a conversation about religion and sexuality was not appropriate to have in the classroom. On

15 August 24, 2015 I received an email from Mr. Beukelman, requesting that I contact T.V. regarding

16 an incident with this same student. I did so, and afterwards, T.V. and I had a conversation regarding

17 comments the student had made about religion. T.V. again indicated that she wanted to transfer out

18 of this class and we accommodated her request. I also spoke to "Emily" again about whether it was

19 appropriate to discuss religion and sexuality in class. "Emily" informed me that T.V. had been a

20 participant in that conversation.

21        Student dress code issues and violations are a major concern at Sierra High School.

22 Violations of the dress code can cause a major disruption in the school day, including students

23 interrupting class to discuss the offending item, students "sharing" offending items such as hats, and

24 students engaging in arguments or even physical altercations on the basis of perceived offensive

25 clothing. The school staff has been instructed, and works relentlessly, to identify dress code

26 violations and rectify them appropriately, whether asking the student to remove the article of

27 clothing, issuing a detention, setting up a meeting with the student and parents, etc. The school

28

1  office maintains some t-shirts for students to wear if the shirts they wear to school are deemed

2  inappropriate.

3          In all, I attended three meetings regarding one t-shirt. I had conversations with Mr.

4  Hammarstrom, Mr. Taylor and T.V. outside of those meetings. I had two meetings with "Emily,"

5  whose statements T.V found offensive. This took substantial time away from my ordinary job

6  duties and does not constitute a typical response the administration must make to a dress code issue.

7  The school staff had to institute and undertake a schedule change for T.V., which is time-

8  consuming, complex, and was a further disruption of school activity and use of school resources.

9  Further, it came to my attention that T.V. and her peers were posting about the t-shirt, her inability

10  to wear the shirt, and this lawsuit, on social media. I had to take even further time from my ordinary

11  duties to address those concerns. Each of these significant disruptions began with one t-shirt; none

12  of these specific concerns existed before T.V. wore her t-shirt. Some of the disruption has occurred

13  because, although T.V. has set forth her beliefs through her t-shirt, she does not allow others to

14  respond to her regarding her shirt. She has become upset at "Emily," Mr. Hammarstrom, and other

15  students allegedly making comments to her or having a discussion near her about religion and

16  sexuality. Further administrative time has been spent addressing T.V.'s concerns, and her apparent

17  desire to have the freedom to express all of her own opinions, without others having the opportunity

18  to express their opinions in response.

19  **SPECIAL INTERROGATORY NO. 2:**

20          State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION violates the

21  dress code that applies to students at Manteca High School.

22  **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

23          Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client

24  privilege and attorney work product doctrine. Subject to, and without waiving said objections, or

25  any objections, Defendant responds as follows: Plaintiff did not attend Manteca High School and

26  Defendants do not work at Manteca High School. Defendants are not aware of the dress code that

27  applies to students at Manteca High School.

28

1   DATED: January 22, 2016                    **SPINELLI, DONALD & NOTT**

2

3                                        By:_____

4                                            DOMENIC D. SPINELLI
                                             ALISON W. WINTER
5                                            Attorneys for Defendants,
                                             **DAN BEUKELMAN and GREG LELAND**
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        5
DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

Case: *T.V. v. Beukelman*
Eastern District of California Case No.:     2:15-cv-02163-JAM-CKD

## VERIFICATION

The undersigned hereby asserts as follows:

I am a party to the above-entitled proceeding. The matters contained in the foregoing **DEFENDANT GREG LELAND'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE,** are true of my own knowledge, except as to the matters therein stated on information and belief, and as to those matters I believe them to be true.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____1 / 21_____, 2016, at _Manteca_, California.

_____
GREG LELAND
Vice Principal of Sierra High School

IELLI, DONALD &
NOTT

**PROOF OF SERVICE**

COURT:              United States District Court, Eastern District of California
CASE NO.:           2:15-cv-02163-JAM-CKD
CASE NAME:          *T.V. v. Dan Beukelman and Greg Leland*

     I am a citizen of the United States, employed in the County of Sacramento, State of California. My business address is 815 S Street, Second Floor, Sacramento, CA 95811. I am over the age of 18 and not a party to the above-entitled action.

     I am readily familiar with Spinelli, Donald & Nott's practice for collection and processing of correspondence for mailing with the United States Postal Service. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle. Each day's mail is collected and deposited in a U.S. mailbox at or before the close of each day's business. (Code Civ. Proc., § 1013a(3) or Fed.R.Civ.P.5(a) and 4.1.)

     On January 22, 2016, I caused the within **DEFENDANT GREG LELAND'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE**, the original of which was produced on recycled paper, to be served via

☒   MAIL--
     Placed in the United States Mail at Sacramento, California in an envelope with postage thereon fully prepaid addressed as follows:
              **PLEASE SEE ATTACHED SERVICE LIST**

☐   BY ELECTRONIC SERVICE--
     I caused such document to be electronically served by filing said document electronically in accordance with rules of electronically filing documents. See Local Rule 5-135(a); Fed. R. Civ. P. 5(b)(2)(D).

☐   FAX AND MAIL--
     I personally sent to the addressee's telecopier number indicated below a true copy of the above-described document(s) before 5:00 p.m. I verified transmission without error by a transmission report issued by the facsimile machine upon which said transmission was made immediately following the transmission. Thereafter, I placed a true copy in a sealed envelope with the first class postage affixed and mailed as follows:

☐   PERSONAL SERVICE--
     By causing delivery by hand to the addressee addressed as follows:

☐   FEDERAL EXPRESS--
     By causing delivery by Federal Express of the document(s) listed above to the person(s) at the address(es) set forth below:

1      I declare under penalty of perjury under the laws of the State of California that the foregoing
2  is true and correct.  Executed on January 22, 2016, at Sacramento, California.

                          Jessica Patton

PINELLI, DONALD
& NOTT

2

1

## SERVICE LIST

2

| COURT: | United States District Court, Eastern District of California |
| CASE NO.: | 2:15-cv-02163-JAM-CKD |
| CASE NAME: | *T.V. v. Dan Beukelman and Greg Leland* |

3

4

5

| American Civil Liberties Union Foundation of Northern California, Inc.<br>Christine P. Sun<br>Linnea L. Nelson<br>Julia Harumi Mass<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: (415) 621-2493<br>Facsimile: (415) 255-1478<br>Email: csun@aclunc.org<br>   lnelson@aclunc.org<br>   jmass@aclunc.org | Attorneys for Plaintiff<br>*T.V. through her next friend and mother, Heather Victor* |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PINELLI, DONALD
& NOTT

3