# EXHIBIT 1

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                 SACRAMENTO DIVISION

4                      --oOo--

5

6   T.V., through next friend and mother

7   HEATHER VICTOR,

8                 Plaintiff,

9      vs.                          No. 2:15-CV-02163

10  DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11  Sierra High School; GREG LELAND, Vice

12  Principal of Sierra High School,

13              Defendants.

14  _____/

15

16             ROUGH DRAFT - NOT CERTIFIED

17

18                 DEPOSITION OF

19                 DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21          WEDNESDAY, JANUARY 27, 2016

22

23

24

25  Reported by Marianne R. Boyd, CSR NO. 6685

                                                      1

1      A.   In a classroom context, absolutely not.  I
2  think that is a conversation that can be had, but it
3  needs to be -- I don't want to say the word "controlled"
4  because once again it's a very passionate topic
5  depending on what side of the topic you're on or in the
6  middle as well.
7      Q.   Okay.  So do you think that the topic of gay
8  rights is inappropriate in the school context on a
9  T-shirt?
10      A.   Yes.
11      Q.   How about "I Support Gay Marriage"?
12      A.   Once again, that would be a short that would
13  fall under the category of disrupting -- could fall
14  under the category of disrupting the learning
15  environment.
16      Q.   Okay.  So it could be prohibited?
17      A.   Could be, yes.
18      Q.   If a student wore "I Support Gay Marriage" on
19  their T-shirt tomorrow, would that be prohibited at
20  Sierra High School?
21           MR. SPINELLI:  It could be an incomplete
22  hypothetical.  You can answer to the best of your
23  ability.
24           THE WITNESS:  Yes.
25           MS. NELSON:  Q.  And do you think the topic of

# EXHIBIT 2

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                 SACRAMENTO DIVISION

4                     --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8              Plaintiff,

9       vs.                       No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13             Defendants.

14   _____/

15

16            ROUGH DRAFT - NOT CERTIFIED

17

18                DEPOSITION OF

19                DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21          WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

1  sexual connotations?

2      A.   Yes.  Could.

3      Q.   Okay.  And do you believe that the word -- that

4  the phrase "sexual orientation" includes any other

5  meaning besides physical sexual acts?

6      A.   To me sexual orientation means that is the

7  person's idea of what -- if they -- I guess for lack of

8  better terms, if you're a boy, or man with a

9  relationship with another man, a man with another

10 relationship with a woman, a woman with a woman and

11 woman with a man, so it's your sexual orientation, what

12 you believe in is what's right for you.

13     Q.   My question was do you believe that the phrase

14 "sexual orientation" includes any other meaning besides

15 physical sexual acts?

16     A.   Yes.

17     Q.   So let me give you some more examples of

18 potential messages on T-shirts.  Let me know if they

19 would be prohibited or not at Sierra High School.

20          "Gay Pride"?

21     A.   No.

22     Q.   Okay.  Is "Gay Pride" prohibited or not -- I'm

23 sorry, is "Gay Pride" prohibited by the dress code

24 policy?

25     A.   Yes.

Q.   Is "I Support My Gay Friends" prohibited by the
policy?

A.   Yes.

Q.   Is "Gay People Should Be Treated Equally"
prohibited by the dress code policy?

A.   Yes.

Q.   Is "I'm Straight, But I Vote Gay," prohibited
which the policy?

A.   Yes.

Q.   Is "I Support Equal Marriage Rights" prohibited
by the dress code policy?

A.   At this point, I would say no to that, it's not
prohibited.

Q.   And what makes it different from the other
examples that I've just given you?

A.   Because it's not referencing a specific sexual
orientation.

Q.   What if the reason the student wore "I Support
Equal Marriage Rights" is to promote gay marriage?

MR. SPINELLI:  That would be an incomplete
hypothetical, calls for speculation.

THE WITNESS:  Once again, that would be a
conversation with the student to find out what the
reason is, why they're wearing a shirt, what their
thought process is.

# EXHIBIT 3

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                 SACRAMENTO DIVISION

4                      --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                 Plaintiff,

9       vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                Defendants.

14   _____/

15

16             ROUGH DRAFT - NOT CERTIFIED

17

18                 DEPOSITION OF

19                 DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21         WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

1     Q.   Do you see that sentence?

 2     A.   I do.  Yes.

 3     Q.   So what if T.V.'s intent is to spark a

 4   conversation with her teacher stating "Nobody Knows I'm

 5   a Lesbian" but not to disrupt their learning

 6   environment, would it be prohibited?

 7     A.   T.V.'s intent to wearing the shirt was to get a

 8   reaction out of her teacher.  She said that.

 9     Q.   Okay.  T.V. said different -- many things

10   maybe, I can tell you what she said in the complaint and

11   we can pull up the complaint if you want to look at

12   that, but let's say, presume for the purposes of this

13   question that she intended to spark a conversation with

14   other students about gay rights.  Is that prohibited the

15   district's dress code policy?

16         MR. SPINELLI:  Vague and ambiguous, incomplete

17   hypothetical.  You can answer the best you can.

18         THE WITNESS:  The shirt itself, the writing

19   itself is prohibited by the school district.  The

20   conversation would not be because students have those

21   conversations, like you just referred to a minute ago,

22   where what if she was having a conversation with

23   students about sexuality.

24         MS. NELSON:  Q.  So regardless of T.V.'s

25   intent, the writing on the T-shirt is prohibited by the

                                                    113

# EXHIBIT 4

ROUGH DRAFT - NOT CERTIFIED

1         UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF CALIFORNIA

3          SACRAMENTO DIVISION

4            --oOo--

5

6   T.V., through next friend and mother

7   HEATHER VICTOR,

8         Plaintiff,

9    vs.              No. 2:15-CV-02163

10  DAN BEUKELMAN, Assistant Principal of    JAM-CDK

11  Sierra High School; GREG LELAND, Vice

12  Principal of Sierra High School,

13        Defendants.

14  _____/

15

16        ROUGH DRAFT - NOT CERTIFIED

17

18           DEPOSITION OF

19           DAN BEUKELMAN

20        MANTECA, CALIFORNIA

21     WEDNESDAY, JANUARY 27, 2016

22

23

24

25  Reported by Marianne R. Boyd, CSR NO. 6685

                                               1

1   Q. What if they just want to have a conversation

2 with other students about Obama as the president?

3   A. There are forums to have that on campus.  Once

4 again, the government econ classes, the U.S. History

5 class, it may be an English class where they're doing

6 persuasive speeches.  It may be a casual conversation,

7 but we're not -- high schools aren't in the business

8 of -- we're not a college campus where students are more

9 mature and students are able to discern the difference

10 between conversation and harassment.  Does that make

11 sense?  I don't know if that makes sense or not.

12   Q. Do you feel there is a difference between

13 conversation and harassment?

14   A. Absolutely.

15   Q. And do you believe that high school students

16 are able to have a conversation without it being

17 harassment?

18   A. Some.

19   Q. And so what if a student wore a T-shirt to

20 school that says, "Obama is a terrible president," they

21 are being targeted by other students, you ask, "Why did

22 you wear the T-shirt," and they say, "Because I wanted

23 to have a conversation with other students about our

24 president."  Would you ask the student to take off the

25 T-shirt under those circumstances?

ROUGH DRAFT - NOT CERTIFIED

```
 1       A.    Not under that circumstance, no.

 2       Q.    Why?  Why not?

 3       A.    If their goal is to promote healthy

 4   conversation, that's completely different than I'm

 5   wearing it to get a reaction out of students that could

 6   potentially cause a complete disruption of the school

 7   learning environment.

 8       Q.    So if their intention is to spark a

 9   conversation, then that's okay?

10       A.    Depending on the shirt, yes.  I mean -- using

11   that shirt as an example, that would be yes, that if

12   you're trying to promote a conversation.  I would

13   probably tell you in my 16 years in education, I don't

14   think I've ever had that come up.

15       Q.    Have you ever had it come up where a student

16   was targeted because of the message on their T-shirt and

17   so, therefore, you asked the student to take off the

18   T-shirt with the message?

19       A.    Yes.

20       Q.    And how many times has that happened during

21   your time at Sierra High School?

22       A.    I could not recall.  I couldn't give you a

23   number, to be honest with you.  And I'm not going to say

24   it's one to a hundred or a hundred to a thousand.  I

25   don't know.  We have over -- probably in the last four
```

60

# EXHIBIT 5

1                  UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF CALIFORNIA

3                      SACRAMENTO DIVISION

4                          --oOo--

5

6     T.V., through next friend and mother

7     HEATHER VICTOR,

8                      Plaintiff,

9          vs.                         No. 2:15-CV-02163

10    DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11    Sierra High School; GREG LELAND, Vice

12    Principal of Sierra High School,

13                     Defendants.

14    _____/

15

16                ROUGH DRAFT - NOT CERTIFIED

17

18                     DEPOSITION OF

19                     DAN BEUKELMAN

20                   MANTECA, CALIFORNIA

21              WEDNESDAY, JANUARY 27, 2016

22

23

24

25    Reported by Marianne R. Boyd, CSR NO. 6685

1

```
1        A.   Yes.

2        Q.   What kind of administrative duties do you have?

3        A.   Supervision of students and staff, parental

4   contact, all facets of running a comprehensive high

5   school.

6        Q.   And approximately how much of your time is

7   normally occupied with the administrative duties that

8   you just described?

9        A.   A hundred percent.

10       Q.   One of those administrative duties is the

11  supervision of students and staff; correct?

12       A.   Correct.

13       Q.   And approximately how much of your time is

14  occupied with the supervision of students and staff?

15       A.   That's a hundred percent.  I mean, that's what

16  I do.  I run a high school.  It could be a staff issue,

17  it could be a student issue.  Anything I do is related

18  to students or staff.

19       Q.   Related to the supervision of students and

20  staff; is that correct?

21       A.   Correct.

22       Q.   And you also mentioned that one of your

23  administrative duties is parental contact.  Correct?

24       A.   Correct.

25       Q.   Approximately how much of your time is occupied
```

8

```
 1    with parental contact?

 2        A.   Daily basis.  There is probably not a

 3    percentage.

 4        Q.   But on a daily basis?

 5        A.   A daily basis, correct.

 6        Q.   On a daily basis you have contact with parents?

 7        A.   Correct, in some form or another.

 8        Q.   And do you ever talk to students in your

 9    office?

10        A.   Yes.

11        Q.   And how often do you talk to students in your

12    office?

13        A.   I couldn't -- I mean, it's not every day, but

14    it's not once a month.  It's when it's needed I guess

15    would be the best way to put it.  There are days when I

16    will talk to 17 to 30 students, there are days when I

17    don't talk to students directly in my office.

18        Q.   Okay.  So there are days when you talk to 17 to

19    30 students directly in your office?

20        A.   Correct.

21        Q.   And there are days when you talk to no students

22    in your office?

23        A.   Right.

24        Q.   So approximately, let's say in a given month,

25    how often, how many students would you talk to in your
```

1    office?

2         A.   I would say 40 to 50.  And that's not probably

3    an accurate number, but -- I mean, I don't keep track.

4    When they come in, they come in basically.  It's an open

5    door.  Some will knock in and say hi, some will knock in

6    and say they have a question about a scholarship or

7    something with a teacher or something going on at home.

8    Availability.  When I'm needed, I'm there.

9         Q.   This contact that we're discussing with

10   students in your office, is that in the category of

11   student supervision that we were talking about before?

12        A.   Not direct supervision.  Like I said, it could

13   encompass anything from things going on in a classroom,

14   things going on at home, just simple questions like hey

15   I was thinking about becoming a doctor.  What classes

16   should I take.  I want to go to UC Davis or

17   San Francisco State.  Which one would you think would be

18   better?

19        Q.   So it's a combination of counseling and

20   supervision?

21        A.   Counseling, supervision, correct, discipline,

22   attendance issues, personal needs.

23        Q.   So just so I can understand a little bit more,

24   we had previously talked about student supervision, that

25   you spend a significant amount of time in supervision of

10

1    students.  What's included in the category of

 2    supervision of students?

 3        A.    So when I'm out in the quad or on campus, might

 4    not necessarily be the quad, before school, during

 5    brunch, during the lunchtime and after school, that

 6    would be direct supervision of students, and at

 7    activities before and after school as well.

 8        Q.    So throughout the day and in all different

 9    areas of the school you're supervising students?

10        A.    Correct.

11        Q.    And what activities -- what does that mean?

12    What type of issues do you deal with in terms of student

13    supervision?

14        A.    It could range from simple attendance issues to

15    discipline issues, dealing with students on IEP plans

16    and enforcement of that.

17        Q.    Okay.  So do you handle student grievances?

18        A.    Yes.

19        Q.    And about how much of your time is taken --

20    sorry.  Let me start over.

21            About how much of your time when you are

22    handling student supervision is occupied with handling

23    student grievances?

24            MR. SPINELLI:  Vague as to time, might be

25    overbroad.  You can answer.

                                                          11

# EXHIBIT 6

1                UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF CALIFORNIA

3                  SACRAMENTO DIVISION

4                        --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                    Plaintiff,

9        vs.                          No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                    Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                    DEPOSITION OF

19                    DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21             WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                        1

office?

A.   I would say 40 to 50.  And that's not probably an accurate number, but -- I mean, I don't keep track.  When they come in, they come in basically.  It's an open door.  Some will knock in and say hi, some will knock in and say they have a question about a scholarship or something with a teacher or something going on at home.  Availability.  When I'm needed, I'm there.

Q.   This contact that we're discussing with students in your office, is that in the category of student supervision that we were talking about before?

A.   Not direct supervision.  Like I said, it could encompass anything from things going on in a classroom, things going on at home, just simple questions like hey I was thinking about becoming a doctor.  What classes should I take.  I want to go to UC Davis or San Francisco State.  Which one would you think would be better?

Q.   So it's a combination of counseling and supervision?

A.   Counseling, supervision, correct, discipline, attendance issues, personal needs.

Q.   So just so I can understand a little bit more, we had previously talked about student supervision, that you spend a significant amount of time in supervision of

1    students.  What's included in the category of

2    supervision of students?

3        A.    So when I'm out in the quad or on campus, might

4    not necessarily be the quad, before school, during

5    brunch, during the lunchtime and after school, that

6    would be direct supervision of students, and at

7    activities before and after school as well.

8        Q.    So throughout the day and in all different

9    areas of the school you're supervising students?

10       A.    Correct.

11       Q.    And what activities -- what does that mean?

12   What type of issues do you deal with in terms of student

13   supervision?

14       A.    It could range from simple attendance issues to

15   discipline issues, dealing with students on IEP plans

16   and enforcement of that.

17       Q.    Okay.  So do you handle student grievances?

18       A.    Yes.

19       Q.    And about how much of your time is taken --

20   sorry.  Let me start over.

21            About how much of your time when you are

22   handling student supervision is occupied with handling

23   student grievances?

24            MR. SPINELLI:  Vague as to time, might be

25   overbroad.  You can answer.

11

# EXHIBIT 7

1               UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                  SACRAMENTO DIVISION

4                       --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                   Plaintiff,

9       vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                   Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                   DEPOSITION OF

19                   DAN BEUKELMAN

20                 MANTECA, CALIFORNIA

21              WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                      1

THE WITNESS:  It would be hard to discern an
exact amount of time because some students will come to
me while I'm supervising lunch, for example, and ask me
a question about this teacher did this or this student
is doing this or my parent grounded me for this, is that
legal type questions.  So I couldn't really give you a
time on that, a specific amount.

MS. NELSON:  Q.  Let's say in a given week,
approximately how much of your time is occupied with
handling student grievances?

A.  Once again, I can't give a number, because it
depends on my week, if I'm there at the school that week
or if I'm in meetings a lot during the week.  So it
varies of when I'm on campus.  So I couldn't give you an
exact time, I mean, if that's what you're looking for.

Q.  I don't need anything exact.  I'm looking for
your best estimate.

A.  I'll say -- I can't answer that because I
really don't know, to be honest.  I couldn't give you a
number say it was 20 percent, 80 percent of my time.  I
couldn't give you that number.  It's as it comes up.

Q.  So it's between 20 and 80 percent; is that
correct?

A.  That would be a very large, vague number, but
yes, I would say.

12

# EXHIBIT 8

2            EASTERN DISTRICT OF CALIFORNIA

3              SACRAMENTO DIVISION

4                  --oOo--

5

6   T.V., through next friend and mother

7   HEATHER VICTOR,

8                Plaintiff,

9      vs.                        No. 2:15-CV-02163

10  DAN BEUKELMAN, Assistant Principal of    JAM-CDK

11  Sierra High School; GREG LELAND, Vice

12  Principal of Sierra High School,

13                Defendants.

14  _____/

15

16            ROUGH DRAFT - NOT CERTIFIED

17

18               DEPOSITION OF

19               DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21           WEDNESDAY, JANUARY 27, 2016

22

23

24

25  Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

weeks.  So she was starting -- I think she was only
moved out of one class.  So she has to start, she's
behind three weeks in her learning of that classroom.

Q.    How was the schedule change connected to her
wearing the T-shirt three weeks earlier?

A.    The shirt was not three weeks earlier.  We
started school is what I was saying, we started school
on the 6th of August.  She was changed classes per her
request on the 24th.

Q.    How was the schedule change connected to her
wearing the T-shirt?

A.    After she wore the T shirt, there was
conversation between, in one of the classes that made
T.V. feel uncomfortable and she no longer wanted to
remain in that class.

Q.    So the schedule change was related to comments
that were made to her by other students?

A.    And comments she made to the students as well.
From what T.V. said and what Mr. Leland has told me, is
they were having a conversation amongst themselves, the
students themselves, and the conversation made her feel
uncomfortable and that's why she wanted to move out.

Q.    And then you also had meetings with a lawsuit.
That was also --

A.    Well, yes, when the lawsuit, and that was

133

1  whenever we first received that, October or September,

2  whenever that was.

3       Q.   So there was --

4       A.   When I say disruption that's not to the

5  learning environment, it's to the regular schedules we

6  have as administrators when we have to deal with that

7  type of thing, it takes away from our normal duties

8  within the school, teacher evaluations, walk-throughs

9  for classrooms, IEPs, whatever our normal duties are.

10      Q.   When I asked you about all of the disruption

11 then we talked about the initial T.V. being sent out of

12 the classroom, being sent to the office, her missing

13 class, meetings among the administrators and the staff

14 about the decision whether or not the T-shirt was

15 prohibited, there was the schedule change a couple of

16 weeks later in T.V.'s  schedule, there were meetings

17 about the lawsuit.  Was there any other disruption?

18      A.   I believe there was some things going on it

19 became a she said he said type of thing, where T.V., and

20 I don't know the exact details, but from what I

21 understand is there was some conversations between

22 students on campus, between T.V. and another student

23 they have different beliefs, but it was -- so T.V. came

24 to Mr. Leland and said this other young lady is saying

25 things to me.  We called the other young lady is and she

                                                      134

# EXHIBIT 9

1                UNITED STATES DISTRICT COURT

2                EASTERN DISTRICT OF CALIFORNIA

3                  SACRAMENTO DIVISION

4                       --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                   Plaintiff,

9       vs.                          No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                  Defendants.

14   _____/

15

16               ROUGH DRAFT - NOT CERTIFIED

17

18                  DEPOSITION OF

19                  DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21            WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                        1

```
 1        A.   She was sent up to the office and Mr. Leland
 2   talked to her and told her she could not wear that
 3   shirt.
 4        Q.   And you previously stated that T.V.'s T-shirt
 5   was disruptive to the school environment.
 6        A.   Correct.
 7        Q.   And tell me all of the disruption that occurred
 8   as a result of T.V. -- the message on T.V.'s T-shirt?
 9        A.   For one she was taken out of class.  That's a
10   disruption for her learning environment.  The teacher in
11   question sent her up, had to stop doing what he was
12   doing.  Mr. Leland had to deal with it.  I had to deal
13   with it.  It was the reason why -- indirectly, but
14   started why she was moved out of her classes that she
15   was in.  Caused us to have a meeting, which is fine,
16   with her dad and her and Mr. Leland and myself and
17   Mr. Hammarstrom.  We're here.  It could be a disruption
18   I guess because I'm not in my office.
19        Q.   And approximately how many meetings did you
20   have with T.V. about her T shirt?
21        A.   Two.
22        Q.   And approximately how many meetings did you
23   have with anyone else about T.V.'s T-shirt?
24             MR. SPINELLI:  I'm going to object, and that
25   would include meetings with counsel since I represent
```

127

the defendants.

MS. NELSON:  Q.  Putting assigned the meetings that you had with your attorney, how many meetings did you have with T.V. or anyone else to discuss the T-shirt?

A.  I had two meetings with T.V., one the day after she was asked to remove her shirt and then the day that we met with her father, Mr. Leland and Mr. Hammarstrom.

Q.  And did you have any other meetings?

A.  With T.V., no.

Q.  Did you have any other meetings with anyone else besides your attorney?

A.  Yes, Mr. Leland and I and Mr. Clark talked about the shirt.  I had a meeting with Mr. Hammarstrom about his conversation with T.V.

Q.  So you had two meetings with T.V.?

A.  Correct.

Q.  One of those meetings included her father?

A.  Correct.

Q.  And you had another meeting with Mr. Leland and Mr. Clark?

A.  Yeah.  We meet every week as an admin team and discuss things, so I'm sure that this conversation came up.

Q.  So that meeting was during the course of your

1  regular administrative team meeting?

2     A.   And other times, especially when the initial

3  lawsuit came out that we were informed that we were

4  being sued, and then of course we had meetings

5  discussing the next step, what was going on, what we

6  needed to do from our side, so on and so forth.

7     Q.   And you also said that you had a meeting with

8  Mr. Hammarstrom.

9     A.   Correct.

10    Q.   Did you have one meeting with Mr. Hammarstrom

11 about the T-shirt?

12    A.   More than one.

13    Q.   Approximately how many meetings did you ever

14 with Mr. Hammarstrom?

15    A.   He was in the meeting, just him and I, and he

16 was also in the meeting with Mr. Victor and T.V., and

17 then probably in passing, just different, "What's going

18 on with the lawsuit.  Am I going to be talked to?  Do I

19 need to get legal counsel," you know, that type of

20 stuff.

21    Q.   So it sounds like what you're saying is that

22 there was what you perceive as disruption relating to

23 T.V.'s T-shirt and then included in that is disruption

24 related to the lawsuit.  Is that right?

25    A.   Rephrase that.

1   Q.   I was asking you to describe all of the
2   disruption related to T.V.'s T-shirt.
3   A.   Okay.
4   Q.   And so you described some meetings and
5   conversations that you had with people about her
6   T-shirt, and then included in that was meetings and
7   conversations you had related to this lawsuit.
8   A.   Correct.  Because that takes away from our
9   normal duties as administrators, or in Mr. Hammarstrom's
10  case, teaching.
11  Q.   Tell me about the time that T.V. was taken out
12  of the class for the T-shirt, the first?
13  A.   I was not present for that.
14  Q.   The first incident of disruption that you said.
15  A.   I was not present for that, so I cannot speak
16  to that because I was not there.
17  Q.   Why was she taken out of class?
18  A.   From what I was told, because she was wearing
19  this shirt and the teacher felt it may be inappropriate
20  for the school environment.
21  Q.   So she was sent out of the classroom by her
22  teacher?
23          MR. SPINELLI:  May lack foundation.
24          THE WITNESS:  I was not there.  That was just
25  the conversations that we had.

130

```
 1          MS. NELSON:  Q.  Is it your understanding that
 2    T.V. was taken out of class by her teacher because she
 3    was wearing a T-shirt?
 4       A.   She was asked -- the teacher it's my
 5    understanding, asked Mr. Leland to call her out of
 6    class.  So, yes.
 7       Q.   So T.V. was taken out of class because the
 8    teacher and Mr. Leland called her out of class; correct?
 9          MR. SPINELLI:  It's argumentative and lacks
10    foundation, calls for speculation.
11          THE WITNESS:  It's my understanding that
12    Mr. Leland got her out of the class because of
13    Mr. Hammarstrom's initial conversation with Mr. Leland
14    about the shirt -- that she was wearing the shirt.
15          MS. NELSON:  Q.  And then T.V. was sent to the
16    office; correct?
17       A.   That is my understanding, yes.
18       Q.   So she missed class?
19       A.   That is my understanding as well.
20       Q.   Then also you had meetings to discuss
21    prohibiting the T-shirt; correct?
22       A.   Correct.
23       Q.   And then there was also a schedule change; is
24    that correct?
25       A.   Correct.
```

131

1    Q.    That T.V. had a schedule change in her classes?

2    A.    Correct.

3    Q.    So the teacher calling her out and being sent

4    to the office and the meetings about the decision to

5    prohibit the T-shirt, was that all related to the

6    decision to prohibit her from wearing the T-shirt?

7    A.    From what I understand, once again I was not

8    there, is Mr. Hammarstrom notified Mr. Leland about the

9    shirt, and Mr. Hammarstrom did not know if it was school

10   appropriate or not.  So he asked Mr. Leland to call her

11   out of class.  So how Mr. Leland did that, did he just

12   call the room, did he get a campus supervisor to pick

13   her up, I'm not real sure, and she was brought up to the

14   office.

15   Q.    So that was all related to the --

16   A.    To the shirt.

17   Q.    -- to the discussions about whether or not it

18   violates the dress codes policy?

19   A.    Correct.

20   Q.    And the schedule change, what was the

21   disruption caused by the schedule change?

22   A.    For one she had to change classes and enter new

23   classes which is a disruption to her.  I forget how many

24   weeks we were in.  I want to say it was the 24th, if I'm

25   not mistaken.  So we would have been in school for three

```
 1    weeks.  So she was starting -- I think she was only
 2    moved out of one class.  So she has to start, she's
 3    behind three weeks in her learning of that classroom.
 4        Q.   How was the schedule change connected to her
 5    wearing the T-shirt three weeks earlier?
 6        A.   The shirt was not three weeks earlier.  We
 7    started school is what I was saying, we started school
 8    on the 6th of August.  She was changed classes per her
 9    request on the 24th.
10        Q.   How was the schedule change connected to her
11    wearing the T-shirt?
12        A.   After she wore the T shirt, there was
13    conversation between, in one of the classes that made
14    T.V. feel uncomfortable and she no longer wanted to
15    remain in that class.
16        Q.   So the schedule change was related to comments
17    that were made to her by other students?
18        A.   And comments she made to the students as well.
19    From what T.V. said and what Mr. Leland has told me, is
20    they were having a conversation amongst themselves, the
21    students themselves, and the conversation made her feel
22    uncomfortable and that's why she wanted to move out.
23        Q.   And then you also had meetings with a lawsuit.
24    That was also --
25        A.   Well, yes, when the lawsuit, and that was
```

133

whenever we first received that, October or September,

     whenever that was.

          Q.    So there was --

          A.    When I say disruption that's not to the

     learning environment, it's to the regular schedules we

     have as administrators when we have to deal with that

     type of thing, it takes away from our normal duties

     within the school, teacher evaluations, walk-throughs

     for classrooms, IEPs, whatever our normal duties are.

          Q.    When I asked you about all of the disruption

     then we talked about the initial T.V. being sent out of

     the classroom, being sent to the office, her missing

     class, meetings among the administrators and the staff

     about the decision whether or not the T-shirt was

     prohibited, there was the schedule change a couple of

     weeks later in T.V.'s  schedule, there were meetings

     about the lawsuit.  Was there any other disruption?

          A.    I believe there was some things going on it

     became a she said he said type of thing, where T.V., and

     I don't know the exact details, but from what I

     understand is there was some conversations between

     students on campus, between T.V. and another student

     they have different beliefs, but it was -- so T.V. came

     to Mr. Leland and said this other young lady is saying

     things to me.  We called the other young lady is and she

                                                        134

said I'm not saying anything.  There were no other witnesses.

I believe it was stated in one of the documents we turned in to you that was brought to our attention that there was an issue in one of the classrooms that we knew nothing about in I want to say it was October or November, there was an incident on the bus that we did not know about until it was last week or the week before, that T.V. had never brought to administrative attention or to her teacher's attention.  And then there was one other one involving a poster.

Q.   And how are those connected to the T-shirt?

A.   Because it all stemmed from this type of thing where allegedly T.V. is saying some kids were saying she should have been kicked out of the band, her lawsuit is stupid, I don't know the exact words, or whatever.

Q.   Was that disruption because of the T-shirt or because T.V. is a lesbian?

MR. SPINELLI:  Well, I think that calls for speculation, lacks foundation as to him knowing the intentions of other people.

MS. SUN:  Well, if you're claiming there is a disruption caused by the T-shirt, we want to hear it.  That's the question.

MR. SPINELLI:  My objection is my objection.

He just tried to give you some examples of things that
have occurred even just recently.  Whether they're
connected to the shirt or something else, I don't know
if he can say that and he can testify to that.

THE WITNESS:  The one would definitely be
because according to T.V. she had overheard people say
to her she should have been kicked out of the band, this
lawsuit is stupid and the lawsuit is stemming from the
school and the district not allowing her to wear the
shirt.

MS. NELSON:  Q.  In that instance the
disruption was about the lawsuit; is that right?

MR. SPINELLI:  I think it's argumentative.  He
answered the question.

THE WITNESS:  Right.  I mean, they were
saying -- I mean, students know there is a lawsuit
because it's in the media, it's on social media, Twitter
and all those things.  I would say that those
conversations were held because of the lawsuit, yes.

Q.  And then you also mentioned that there was
disruption as far as interactions between T.V. and
another student in one of the classes.

A.  I don't know if it was in class or if it was in
passing, wherever it was, and Mr. Leland investigated
that, as far as, from what I understand.

136

ROUGH DRAFT - NOT CERTIFIED

```
 1        Q.   So there was --

 2        A.   And it goes back to this type of thing where

 3   because of the shirt and things being said about

 4   Mr. Hammarstrom the teacher, and these students, once

 5   again, their personal beliefs, whether they believe that

 6   "Nobody Knows I'm a Lesbian" is a shirt that should be

 7   worn, shouldn't be worn, her personal beliefs concerning

 8   sexuality or concerning somebody else's.  It's all kind

 9   of combined into the same.

10        Q.   And how were those conversations disruptive to

11   the educational process?

12        A.   Well, for one, just the recent ones that we

13   just learned about.  We had to pull students out of

14   class.  And that was T.V. -- I don't know exactly how

15   many witnesses were pulled out of class, talked about

16   the bus incident, the poster incident.

17        Q.   And in what way were these conversations

18   connected to the T-shirt?

19        A.   Because the bus one, according to T.V., she

20   overheard students saying to her that she should be

21   kicked out of the band, the lawsuit is stupid, and

22   that's directly related to this T-shirt.

23        Q.   Any other reason that it was connected?

24        A.   To this shirt, not to my knowledge, no.

25        Q.   And you mentioned the poster.
```

137

1    A.    There was a poster incident, I guess, where
2    somebody ripped down a poster and spit on it.  So it was
3    told by somebody to Mr. Leland, and Mr. Leland
4    investigated and didn't find anything about it.
5          And then in our last -- two weeks ago we
6    received something, I believe it was from your office,
7    stating that there was two students who ripped down the
8    poster and spit on it, but T.V. wasn't the one who
9    initially brought that information forward.
10   Q.    How is it connected to the T-shirt?
11   A.    Because T.V. brought it up and said, "I'm being
12   harassed and other people are being harassed because of
13   my sexual beliefs."  That's according to what I've
14   heard.
15          MS. NELSON:  Okay.  Let's take a five-minute
16   break.
17          (A recess was taken from 12:25 to 12:30 p.m.)
18          MS. NELSON:  Q.  Mr. Beukelman, I'm just trying
19   to get an understanding of all of the disruptions that
20   you're claiming arose from T.V.'s T-shirt, wearing a
21   T-shirt.  What I have so far is that T.V. was taken out
22   of her class for wearing the T-shirt, sent to the
23   office.
24   A.    Correct.
25   Q.    The teacher had to stop class to send her to

138

# EXHIBIT 10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

--oOo--

T.V., through next friend and mother

HEATHER VICTOR,

Plaintiff,

vs.                               No. 2:15-CV-02163

DAN BEUKELMAN, Assistant Principal of      JAM-CDK

Sierra High School; GREG LELAND, Vice

Principal of Sierra High School,

Defendants.

_____/

ROUGH DRAFT - NOT CERTIFIED

DEPOSITION OF

DAN BEUKELMAN

MANTECA, CALIFORNIA

WEDNESDAY, JANUARY 27, 2016

Reported by Marianne R. Boyd, CSR NO. 6685

1    the office.

2         A.   That I'm not sure of, because, once again, like

3    I stated earlier, I don't know if Mr. Leland went to get

4    her, if a campus monitor or campus supervisor, whatever

5    you want to call that person, just called her out.  What

6    they do, they may say I need to see -- so I don't know

7    if he had to stop class, if it was band.  I think it was

8    3rd period, which is her band class.  I would assume he

9    had to stop because I don't think you can -- unless she

10   knew she was being called out.  I'm not sure.

11        Q.   Taking it from the top.

12        A.   Okay.

13        Q.   T.V. was taken out of class.

14        A.   Correct.

15        Q.   She was sent to the office for wearing the

16   T-shirt.

17        A.   Correct.

18        Q.   I'm sorry, taking it from the top, this is all

19   of the disruption you're claiming arose from T.V.

20   wearing her T-shirt stating "Nobody Knows I'm a

21   Lesbian."

22        A.   Okay.

23        Q.   First, that she was taken out of class for

24   wearing the T shirt.

25        A.   Yes.

ROUGH DRAFT - NOT CERTIFIED

1     Q.    Second that she was sent to the office for
2  wearing the T-shirt.
3     A.    That is true, yes.
4     Q.    Third, that the teacher may or may not have had
5  to stop the class to send her to the office for wearing
6  the T-shirt.
7     A.    Correct.
8     Q.    Four, that Leland and you had meetings and
9  conversations about the decision to prohibit the T-shirt
10  under the dress code.
11     A.    Correct.
12     Q.    Fifth, that there was a schedule change to
13  T.V.'s schedule?
14     A.    Correct.
15     Q.    Sixth, you had various meetings about the
16  lawsuit.
17     A.    Correct.
18     Q.    Seventh, that there was an incident on the bus
19  where there was some conversations between students.
20     A.    Correct.
21     Q.    Next, that there was a poster that was torn
22  down by other students.
23     A.    Correct.
24     Q.    And is there anything else that was, that
25  you're claiming was a disruption arising from T.V.

1   wearing her T-shirt?

2       A.    The disruption where Mr. Leland had to call

3   both T.V. and another student up because there was some

4   type of argument going back and forth, and I'm not sure

5   exactly what was said.  Someone else could answer that

6   more than I.

7       Q.    Do you know what the topic of the conversation

8   was?

9       A.    I'm not positive.  It has something to do with

10  T.V. and this other young lady don't get along and they

11  don't believe in the same types of things.

12      Q.    Okay.

13      A.    There was also, according to T.V., that we knew

14  nothing about until I'm trying to get my weeks, not last

15  week, but the week before about a conversation in her, I

16  believe it was her U.S. History class about a student

17  who had said something along the lines, and this is

18  paraphrased, "All gays and Mexicans should go into a

19  concentration camp, "or something to that effect.  That

20  was in her or your, I forget which one that was that you

21  showed me.

22      Q.    Anything else?

23      A.    Not that I am aware of, no.  Now, whether

24  Mr. Leland had more conversations with her, I'm not

25  sure.

141

# EXHIBIT 11

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8              Plaintiff,

9       vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13             Defendants.

14   _____/

15

16          ROUGH DRAFT - NOT CERTIFIED

17

18             DEPOSITION OF

19              DAN BEUKELMAN

20           MANTECA, CALIFORNIA

21       WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                              1

committee."

Q. So that would be an unwritten policy where the definition of what gang related apparel is changes?

A. Correct. So, for example, if the Norteno gang who usually claims the color red, decided to claim the color purple and we have been informed by law enforcement that this is the new color, then we would say we aren't going to allow you to wear this color purple or whatever color deemed necessary.

Q. So that would be an unwritten policy?

A. That would be an unwritten policy per the written district 5132(a).

Q. Okay. So do you understand students are allowed to wear slogans on their clothing?

A. Correct.

MS. NELSON: Let's take a break.

(A recess was taken from 10:22 to 10:32 a.m.)

MS. NELSON: Q. So, Mr. Beukelman, I believe we were discussing slogans on clothing before the break. So I would like to have you turn to Exhibit 5, page 2. Towards the bottom of page 2 of Exhibit 5, then there is a statement here, this is your answer to Plaintiff's Interrogatories where you say, "In the past six years there have been approximately 2,530 documented dress code violations at the high school. These have included

62

1    students wearing items of clothing or other apparel that
 2    revealed too much skin, stated 'I love boobies' in
 3    reference to breast cancer support, referenced drugs,
 4    alcohol or violence or were gang related."
 5            So focussing on the part of that statement
 6    where you discuss that students were given dress code
 7    violations, documented dress code violations for wearing
 8    clothing that states "I love boobies" in reference to
 9    breast cancer support, is that currently prohibited?
10        A.   We would not allow that; correct.  I can give
11    you some background information.
12        Q.   That's okay.  I just need to know if it's
13    currently prohibited.  So it's currently prohibited to
14    wearing a T-shirt or other items of clothing that say "I
15    love boobies"; correct?
16        A.   Correct.
17        Q.   And directing your attention to Exhibit 1, the
18    district dress code policy, which part of Exhibit 1
19    addresses the slogan "I love boobies"?
20            MR. SPINELLI:  Or parts; correct.
21            MS. NELSON:  Q.  Correct.
22        A.   I would -- paragraph 2 and this is --
23        Q.   Can you read the sentence?
24        A.   Yes.  It would be the second part of that,
25    "Clothing that degrade any cultural, religious or ethnic

                                                        63

# EXHIBIT 12

1               UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF CALIFORNIA

3                   SACRAMENTO DIVISION

4                        --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                   Plaintiff,

9        vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                   Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                   DEPOSITION OF

19                   DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21            WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

1  code violation, does it matter whether -- sorry.  Let me
2  start over again.

3       In your mind, whether or not it's a dress code
4  violation, is that dependent on the student's reasoning
5  for promoting or for wearing an "I love boobies"
6  bracelet?  What if the student was wearing an "I love
7  boobies" bracelet because they wanted to promote breast
8  cancer research?

9       A.   We understood this when we enforced this rule.
10  And once again specifically I said I agree with the
11  cause of why they're wearing it, but at that point
12  mainly young men, 13, 14, 15-year-old boys, were not
13  embracing the cause, they were embracing the word, and
14  were giggling and being very immature young men, to be
15  honest with you.

16      Q.   So therefore all students were prohibited from
17  wearing, even those students that were wearing the
18  message in support of breast cancer research; correct?

19      A.   Correct.

20      Q.   And this is all still in effect, it doesn't
21  matter the intent of the student who was wearing I love
22  boobies, it's prohibited for everyone?

23      A.   Correct.  And to be honest with you, I don't
24  think I've seen one in recent years.  I couldn't tell
25  you if I have or not.  Now, I will tell you when they

1    had them on we made them turn them inside out so
2    whatever color they were at the time, the writing was
3    not visible but the bracelet was still worn in many
4    instances.
5         Q.   But the message was no longer visible; correct?
6         A.   Correct.
7         Q.   So are you aware that a Federal Court ruled in
8    2013 that school districts may not prohibit students
9    from wearing attire that says "I love boobies"?
10        A.   No.
11        Q.   Okay.  Directing your attention back to Exhibit
12   5, again page 2, in the middle of the page, line 16
13   through 18, you state, "To that end the district's dress
14   code prohibits communications through apparel that are
15   sexually suggestive, degrade religious or ethnic values,
16   or which advocates religious, prejudice or
17   discrimination."  What does "degrade religious or ethic
18   values" mean?
19        A.   That's a word that could mean a few different
20   things.  Degrade meaning looking down upon, making fun
21   of.  I'm trying to think of other words to use as
22   synonyms for degrade off the top of my head.
23        Q.   Make light of, make jokes about?
24        A.   Could make jokes of, make light of.  Basically
25   state your religious or ethnic values are completely

67

# EXHIBIT 13

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF CALIFORNIA

 3                SACRAMENTO DIVISION

 4                     --oOo--

 5

 6   T.V., through next friend and mother

 7   HEATHER VICTOR,

 8                Plaintiff,

 9      vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                Defendants.

14   _____/

15

16            ROUGH DRAFT - NOT CERTIFIED

17

18               DEPOSITION OF

19               DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21          WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685
```

1

1        A.   Correct.  Yes.  I do I should say.

        2        Q.   Is it your understanding that this refers to

        3   the dress code?

        4             MR. SPINELLI:  Well, that would call for

        5   speculation as to what the person who wrote it intended.

        6             THE WITNESS:  I can't say exactly why he wrote

        7   it but that would be an assumption of mine since this

        8   was a conversation about dress code at this time.

        9             MS. NELSON:  Q.  So our references to

       10   heterosexuality prohibited by the district dress code?

       11        A.   Yes.

       12        Q.   And are references to pro-life prohibited by

       13   the dress code?

       14        A.   Yes.

       15        Q.   What does that mean, pro-life?

       16        A.   That means you're against abortion.

       17        Q.   And why are they prohibited?

       18        A.   Once again, this is a conversation that we do

       19   not bring on campus especially on a high school campus

       20   because that is one of those topics that people are

       21   very, very passionate about one way or the other.  And

       22   in the past we have had teachers try to have these

       23   conversations with students and they do not end well.

       24        Q.   And then pro-choice, are messages related to

       25   pro-choice prohibited by the district dress code?

```
 1      A.   Yes.

 2      Q.   For the same reason?

 3      A.   Correct.

 4      Q.   So correct me if I'm misstating what you said,

 5   but messages about abortion, that is pro-life or

 6   pro-choice are prohibited by the district dress code

 7   because they are topics that students are passionate

 8   about?

 9      A.   Well, they're passionate about, but the reason

10   why we stay away from those is because specifically

11   those two topics can really touch home with certain

12   people in a classroom.

13      Q.   And what does that mean can really touch home?

14      A.   For example, a female student may have had to

15   make that choice either way, and once again to me it

16   does not matter, but some other students may or may not

17   know that and that could turn into, and has turned into

18   conversations where someone mentally gets very hurt, and

19   that's something that we feel, as a school for sure and

20   the district, that that's a conversation that should not

21   be held on a high school campus.

22      Q.   Okay.  And so messages about abortion are

23   prohibited from Sierra High School because you feel it's

24   not appropriate because some students may be mentally

25   hurt.  Is that correct?
```

# EXHIBIT 14

ROUGH DRAFT - NOT CERTIFIED

1              UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF CALIFORNIA

3               SACRAMENTO DIVISION

4                   --oOo--

5

6   T.V., through next friend and mother

7   HEATHER VICTOR,

8               Plaintiff,

9     vs.               No. 2:15-CV-02163

10  DAN BEUKELMAN, Assistant Principal of    JAM-CDK

11  Sierra High School; GREG LELAND, Vice

12  Principal of Sierra High School,

13             Defendants.

14  _____/

15

16           ROUGH DRAFT - NOT CERTIFIED

17

18              DEPOSITION OF

19              DAN BEUKELMAN

20            MANTECA, CALIFORNIA

21        WEDNESDAY, JANUARY 27, 2016

22

23

24

25  Reported by Marianne R. Boyd, CSR NO. 6685

1            A.    Messages as in a classroom setting, it's

          2       discussed in classroom settings.

          3            Q.    I'm talking --

          4            A.    But a shirt, correct.

          5            Q.    So a shirt about abortion would be prohibited

          6       because somebody might be mentally hurt?

          7            A.    Correct.

          8            Q.    And you previously said that references to

          9       heterosexuality are prohibited by the district dress

         10       code?

         11            A.    Correct.

         12            Q.    And messages about homosexuality, is that also

         13       prohibited?

         14            A.    The reason why --

         15                  MR. SPINELLI:  Don't assume why he wrote that.

         16                  MS. NELSON:  You don't have to focus on

         17       Exhibit 7.  Let's move on from Exhibit 7.

         18            A.    We don't allow any messages to promote

         19       heterosexuality, homosexuality, pro-life, pro-choice,

         20       those types of shirts.

         21            Q.    Why are messages about heterosexuality

         22       prohibited?

         23            A.    Because we're fair and -- not discriminating

         24       against a person's sexual preference one way or the

         25       other, but we feel as a district and as a school and

                                                                       91

# EXHIBIT 15

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                 SACRAMENTO DIVISION

4                     --oOo--

5

6   T.V., through next friend and mother

7   HEATHER VICTOR,

8              Plaintiff,

9      vs.                        No. 2:15-CV-02163

10  DAN BEUKELMAN, Assistant Principal of    JAM-CDK

11  Sierra High School; GREG LELAND, Vice

12  Principal of Sierra High School,

13             Defendants.

14  _____/

15

16            ROUGH DRAFT - NOT CERTIFIED

17

18               DEPOSITION OF

19               DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21          WEDNESDAY, JANUARY 27, 2016

22

23

24

25  Reported by Marianne R. Boyd, CSR NO. 6685

                                                        1

1    simplistic as the right to drive, but equal rights to

2    women mainly in the United States of America has been

3    equal pay for equal work and the right to vote.

4        Q.   So what's the difference between a T-shirt that

5    says "I Support Gay Marriage" and "I Support Interracial

6    Marriage"?

7        A.   Once again, I believe, I said that earlier, I

8    wouldn't allow either one of those shirts because on a

9    high school campus it's going to cause a disruption.

10       Q.   How about a T-shirt let's say that a student

11   has a religious belief that "God Created the Earth in

12   Six Days," and another student wore a T-shirt expressing

13   support for evolution or expressing a belief in

14   evolution.  Would this T-shirt's be prohibited?

15       A.   It could be.

16            MR. SPINELLI:  That was compound, I think.

17            MS. NELSON:  Q.  So a student who wears a

18   T-shirt expressing a belief in evolution, that could

19   violate the student dress code?

20       A.   It could, yes.

21       Q.   How about a message that, "There are Many

22   Prophets of God"?

23            MR. SPINELLI:  Incomplete hypothetical.

24            THE WITNESS:  Once again, it depends on the

25   situation.

                                                      121

# EXHIBIT 16

1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                      SACRAMENTO DIVISION

4                           --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                    Plaintiff,

9        vs.                          No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                    Defendants.

14   _____/

15

16                ROUGH DRAFT - NOT CERTIFIED

17

18                      DEPOSITION OF

19                      DAN BEUKELMAN

20                    MANTECA, CALIFORNIA

21                WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                          1

1    simplistic as the right to drive, but equal rights to
 2    women mainly in the United States of America has been
 3    equal pay for equal work and the right to vote.
 4        Q.   So what's the difference between a T-shirt that
 5    says "I Support Gay Marriage" and "I Support Interracial
 6    Marriage"?
 7        A.   Once again, I believe, I said that earlier, I
 8    wouldn't allow either one of those shirts because on a
 9    high school campus it's going to cause a disruption.
10        Q.   How about a T-shirt let's say that a student
11    has a religious belief that "God Created the Earth in
12    Six Days," and another student wore a T-shirt expressing
13    support for evolution or expressing a belief in
14    evolution.  Would this T-shirt's be prohibited?
15        A.   It could be.
16             MR. SPINELLI:  That was compound, I think.
17             MS. NELSON:  Q.  So a student who wears a
18    T-shirt expressing a belief in evolution, that could
19    violate the student dress code?
20        A.   It could, yes.
21        Q.   How about a message that, "There are Many
22    Prophets of God"?
23             MR. SPINELLI:  Incomplete hypothetical.
24             THE WITNESS:  Once again, it depends on the
25    situation.

                                                      121

**ROUGH DRAFT - NOT CERTIFIED**

# EXHIBIT 17

**SPINELLI, DONALD & NOTT**
A Professional Corporation
Domenic D. Spinelli, SBN 131192
Alison W. Winter, SBN 251084
815 S Street, Second Floor
Sacramento, CA 95811
Telephone: (916) 448-7888
Facsimile: (916) 448-6888
Email: DomenicS@SDNLaw.com

Attorneys for Defendants,
DAN BEUKELMAN, Assistant Principal
of Sierra High School, and GREG LELAND,
Vice Principal of Sierra High School

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.V., through next friend and mother HEATHER VICTOR,<br><br>        Plaintiffs,<br><br>vs.<br><br>DAN BEUKELMAN, Assistant Principal of Sierra High School; GREG LELAND, VICE PRINCIPAL OF SIERRA HIGH SCHOOL,<br><br>        Defendants. | Case No. 2:15-CV-02163-JAM-CKD<br><br>**DEFENDANT DAN BEUKELMAN'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO**<br><br>Complaint Filed: October 15, 2015<br>Trial Date: February 6, 2017 |

**PROPOUNDING PARTY:**      **Plaintiff T.V.**

**RESPONDING PARTY:**      **Defendant Dan Beukelman**

**SET NUMBER:**      **Two (2)**

     Defendant DAN BEUKELMAN (hereinafter "DEFENDANT") through undersigned counsel, responds and objects to Plaintiff T.V.'s Special Interrogatories, as follows.

     The following responses to Interrogatories are answered in the manner and form required by the Federal Rules of Civil Procedure Rule 26 and 33.

///

///

DEFENDANT DAN BEUKELMAN'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 3:**

State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION violates the dress code that applies to students at Sierra High School.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to, and without waiving said objections, or any objections, Defendant responds as follows: The "school dress code" at Sierra High School is the Manteca Unified School District dress code. Enforcement of the dress code is critical because the school has an obligation to provide and safe learning environment for all of its students. Part of a high schooler's education is learning to control his or her impulses, hormones and emotions while still expressing his or her developing personality. Each student must learn to respectfully state his or her opinions without excessively offending or censoring their peers. Students do not have the same right to freedom of speech that they would enjoy outside of the school campus. Allowing students to communicate anything they want at any time, may lead to inappropriate, offensive and distracting speech. To that end, the District's dress code prohibits communications through apparel that are sexually suggestive, degrade religious or ethnic values, or which advocates religious prejudice or discrimination. The dress code states:

> Clothing, accessories, and jewelry shall be free of writing, pictures, symbols or other insignia, which are crude vulgar, profane, obscene, libelous, slanderous, or sexually suggestive. Clothing that degrade[s] any cultural, religious or ethnic values or which advocate racial, ethnic, or religious prejudice or discrimination, or which promote sex, the use of tobacco, drugs, or alcohol or any unlawful acts are prohibited.

In the past six years, there have been approximately 2,530 documented dress code violations at the high school. These have included students wearing items of clothing or other apparel that revealed too much skin, stated "I love boobies" in reference to breast cancer support, referenced drugs, alcohol or violence, or were gang-related. All of these types of violations were by both male and female students. T.V.'s t-shirt stating "Nobody knows I'm a lesbian" has sexual connotations with high school students. Just like a t-shirt stating "I like girls who kiss girls" presents an added

sexual component to the communication, the shirt stating that a student is a lesbian brings the shirt a step closer to a more sexual communication. Another student was documented for wearing a shirt stating "Just Do You," as it was interpreted by school staff as being sexual in nature and relating to self-gratification. T.V.'s t-shirt stating "Nobody knows I'm a lesbian" is not a content-neutral expression of LGBT support, such as the school's Gay-Straight Alliance t-shirt stating "BElieve in YOUrself," which does not specifically reference any sexuality.

Further, the school has an obligation to protect the rights and freedoms of T.V. as well as every other person on campus. Among those rights is the right to be left alone and have a school environment that is free from distraction and disruption. Some students found T.V.'s t-shirt to be offensive and would prefer not to be confronted with T.V.'s shirt while at school. T.V. does not have a greater freedom to wear her t-shirt than other students have to not be confronted by shirts such as hers that they find unpleasant. To the extent that the offense at the shirt is grounded in an individual's religion, T.V.'s t-shirt violates the dress code because it degrades those students' religious values or belief that homosexuality is improper. Importantly, the administration is not stating or implying that LGBT rights are not valid, important and sensitive. However, as neutral administrators, they are simply unable to allow T.V.'s expression regarding LGBT issues to take priority over other students' freedoms and opinions. No individual's freedom of expression or speech – or their freedom to be free from a distracting environment at school – can be elevated over another's. The school has the authority to limit its students' speech when appropriate and here, the administration has determined that expressions of sexuality or sexual orientation are not appropriate for school.

DATED: January 22, 2016

SPINELLI, DONALD & NOTT

By: _____
DOMENIC D. SPINELLI
ALISON W. WINTER
Attorneys for Defendants,
**DAN BEUKELMAN and GREG LELAND**

Case: *T.V. v. Beukelman*
Eastern District of California Case No.: 2:15-cv-02163-JAM-CKD

## <u>VERIFICATION</u>

The undersigned hereby asserts as follows:

I am a party to the above-entitled proceeding. The matters contained in the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO,** are true of my own knowledge, except as to the matters therein stated on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on <u>January 22</u>, 2016, at <u>Manteca</u>, California.

DAN BEUKELMAN
Assistant Vice Principal of Sierra High School

SPINELLI, DONALD &
NOTT

# EXHIBIT 18

1                UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF CALIFORNIA

3                   SACRAMENTO DIVISION

4                        --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                    Plaintiff,

9        vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                    Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                    DEPOSITION OF

19                    DAN BEUKELMAN

20                  MANTECA, CALIFORNIA

21             WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                        1

1       A.   The word "queer."

2       Q.   How about "Jesus had two dads"?

3       A.   It's an interesting one.  To be honest, I

4   haven't seen that shirt, so I -- that would be under the

5   same veil, I guess, the same umbrella as the other two

6   that you brought up.

7       Q.   So is there a particular word in there that is

8   vulgar, profane or promotes sex or why would it be

9   prohibited, why would "Jesus had two dads" --

10      A.   Again, it's promoting what your belief is, your

11  sexual orientation beliefs.  And you may not believe

12  that or may or may not, but that's what the shirt, in my

13  opinion, is saying that Jesus could have two dads, Jesus

14  could have two moms, either way, we wouldn't allow that.

15      Q.   So is that vulgar?

16      A.   No.

17      Q.   Is "Jesus had two dads" profane?

18      A.   It's more under religious prejudice, hence the

19  word "Jesus" in there.

20      Q.   And so in what way does it show religious

21  prejudice?

22      A.   Once again, it's expressing a student's belief

23  on religion and their belief on their sexual orientation

24  or someone else's sexual orientation.

25      Q.   So clothing that has messages that show belief

                                                        95

1    in religion or sexual orientation is prohibited;
2    correct?
3        A.    Correct.
4            MS. NELSON:  Can we take a two-minute break.
5            (A recess was taken from 11:25 to 11:26 a.m.)
6            MS. NELSON:  Q.  So going now to the message on
7    T.V.'s teacher, "Nobody knows I'm a lesbian," is that
8    prohibited at Sierra High School?
9        A.    Yes.
10       Q.    And what word or words are prohibited in that
11   phrase, "Nobody knows I'm a lesbian"?
12       A.    Once again, it's the complete -- the full
13   statement, nobody knows I'm a lesbian.
14       Q.    Okay.  And so the "nobody" part is not
15   prohibited?
16       A.    Correct.
17       Q.    And the "knows" is allowed?
18       A.    Correct.
19       Q.    And "I'm a" those are allowed?
20       A.    Yes.
21       Q.    And "lesbian" is also allowed; is that correct?
22       A.    Allowed, no.  That's the connotation, the whole
23   statement "Nobody Knows I'm a Lesbian" is the reason why
24   she was sent up for the dress code.
25       Q.    So the word "lesbian," is that also prohibited
                                                          96

# EXHIBIT 19

1

2

3

4

5

6  T.V., through next friend and mother

7  HEATHER VICTOR,

8                   Plaintiff,

9     vs.                          No. 2:15-CV-02163

10  DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11  Sierra High School; GREG LELAND, Vice

12  Principal of Sierra High School,

13                   Defendants.

14  _____/

15

16             ROUGH DRAFT - NOT CERTIFIED

17

18                  DEPOSITION OF

19                  DAN BEUKELMAN

20              MANTECA, CALIFORNIA

21         WEDNESDAY, JANUARY 27, 2016

22

23

24

25  Reported by Marianne R. Boyd, CSR NO. 6685

                                           1

1          A.    Messages as in a classroom setting, it's

2    discussed in classroom settings.

3          Q.    I'm talking --

4          A.    But a shirt, correct.

5          Q.    So a shirt about abortion would be prohibited

6    because somebody might be mentally hurt?

7          A.    Correct.

8          Q.    And you previously said that references to

9    heterosexuality are prohibited by the district dress

10   code?

11         A.    Correct.

12         Q.    And messages about homosexuality, is that also

13   prohibited?

14         A.    The reason why --

15               MR. SPINELLI:  Don't assume why he wrote that.

16               MS. NELSON:  You don't have to focus on

17   Exhibit 7.  Let's move on from Exhibit 7.

18         A.    We don't allow any messages to promote

19   heterosexuality, homosexuality, pro-life, pro-choice,

20   those types of shirts.

21         Q.    Why are messages about heterosexuality

22   prohibited?

23         A.    Because we're fair and -- not discriminating

24   against a person's sexual preference one way or the

25   other, but we feel as a district and as a school and

                                                      91

# EXHIBIT 20

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF CALIFORNIA

 3                  SACRAMENTO DIVISION

 4                       --oOo--

 5

 6   T.V., through next friend and mother

 7   HEATHER VICTOR,

 8                  Plaintiff,

 9        vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                  Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                   DEPOSITION OF

19                   DAN BEUKELMAN

20                 MANTECA, CALIFORNIA

21             WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685
```
                                                        1

myself, that that is an area where we are not going to
have students promote their sexuality on campus, whether
it be either or -- or non -- transgender anything to
that nature.

Q.   And so you believe that messages about sexual
orientation promote sexuality; is that correct?

A.   Not necessarily, no.  They can and on a high
school campus students do not differentiate the
difference between sexual orientation and sexuality and
promoting of sexuality, most students.

Q.   So is that why they're prohibited because most
students don't differentiate between those concepts?

A.   That would be the main reason.  And we do
not -- our thought process is that the students are
there to learn math, English, history, not about whether
you're promoting one's sexual orientation or another and
what your views are in that area.

Q.   And therefore sexual orientation is off the
table, it's prohibited as a message on a T-shirt?

A.   No, that's not true because we have shirts that
are allowed through clubs on campus that will -- our gay
straight alliance shirt for example, which is a club
sponsored event, that shirt is allowed on cable pus.

Q.   What does it?

A.   I believe it says Gay/Straight Alliance, GSA.

92

# EXHIBIT 21

```
 1                 UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF CALIFORNIA

 3                     SACRAMENTO DIVISION

 4                         --oOo--

 5

 6   T.V., through next friend and mother

 7   HEATHER VICTOR,

 8                 Plaintiff,

 9        vs.                          No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                 Defendants.

14   _____/

15

16             ROUGH DRAFT - NOT CERTIFIED

17

18                  DEPOSITION OF

19                  DAN BEUKELMAN

20              MANTECA, CALIFORNIA

21            WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685
```

1

Q.    Does it spell out Gay/Straight Alliance?

        A.    I cannot recall.  I believe we have a picture
of the shirts, but I'm not sure.

        Q.    Okay.  So maybe you know it would be helpful if
we could go through some examples of messages on
T-shirts and you can let me know if it's prohibited or
not and we can get some clarity about the concept.

        A.    Okay.

        Q.    How about "Gay is Good"?

        A.    No.

        Q.    Why?

        A.    Because once again, it's promoting what sexual
preferences are.

        Q.    And in what way is it promoting what sexual
preferences are?

        A.    Let me rephrase it.  Are you referring to gay
as in the gay as in your choice of lifestyle or gay as
in happy?  So let me clarify it.

        Q.    What's the difference to you?

        A.    Well, one means the statement if I am gay, does
that mean are you talking about sexual preference or are
you talking about your attitude?  Correct me if I'm
wrong.

        Q.    So let's assume for the purposes of this
discussion we're talking about gay means in this context

1    that you have a sexual orientation that you prefer to be

2    in a committed relationship with someone who is of the

3    same gender.

4        A.   Okay.  We would not allow that.

5        Q.   And why not?

6        A.   Because once again, we get down to where it

7    could be vulgar, profane, obscene, libelous, slanderous,

8    or sexually suggestive, or the next line, which -- or

9    which promote sex, and once again it could promote sex,

10   not necessarily does, but it could.

11       Q.   And which part of that "Gay is Good" could be

12   vulgar, profane or promote sex?

13       A.   The word "gay."

14       Q.   Okay.  Let me give you another example, "We're

15   here.  We're queer.  Get used to it"?

16       A.   No.

17       Q.   Why not?

18       A.   Same reason.

19       Q.   Because it could be vulgar, profane or promote

20   sex?

21       A.   Correct.

22       Q.   Which word in there is the word that is

23   prohibited?

24       A.   State the --

25       Q.   "We're here.  We're queer.  Get used to it."

                                                        94

# EXHIBIT 22

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8              Plaintiff,

9       vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13             Defendants.

14   _____/

15

16          ROUGH DRAFT - NOT CERTIFIED

17

18            DEPOSITION OF

19            DAN BEUKELMAN

20         MANTECA, CALIFORNIA

21      WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

1    that you have a sexual orientation that you prefer to be

         2    in a committed relationship with someone who is of the

         3    same gender.

         4         A.   Okay.  We would not allow that.

         5         Q.   And why not?

         6         A.   Because once again, we get down to where it

         7    could be vulgar, profane, obscene, libelous, slanderous,

         8    or sexually suggestive, or the next line, which -- or

         9    which promote sex, and once again it could promote sex,

        10    not necessarily does, but it could.

        11         Q.   And which part of that "Gay is Good" could be

        12    vulgar, profane or promote sex?

        13         A.   The word "gay."

        14         Q.   Okay.  Let me give you another example, "We're

        15    here.  We're queer.  Get used to it"?

        16         A.   No.

        17         Q.   Why not?

        18         A.   Same reason.

        19         Q.   Because it could be vulgar, profane or promote

        20    sex?

        21         A.   Correct.

        22         Q.   Which word in there is the word that is

        23    prohibited?

        24         A.   State the --

        25         Q.   "We're here.  We're queer.  Get used to it."

                                                                    94

1       A.    The word "queer."

2       Q.    How about "Jesus had two dads"?

3       A.    It's an interesting one.  To be honest, I

4    haven't seen that shirt, so I -- that would be under the

5    same veil, I guess, the same umbrella as the other two

6    that you brought up.

7       Q.    So is there a particular word in there that is

8    vulgar, profane or promotes sex or why would it be

9    prohibited, why would "Jesus had two dads" --

10      A.    Again, it's promoting what your belief is, your

11   sexual orientation beliefs.  And you may not believe

12   that or may or may not, but that's what the shirt, in my

13   opinion, is saying that Jesus could have two dads, Jesus

14   could have two moms, either way, we wouldn't allow that.

15      Q.    So is that vulgar?

16      A.    No.

17      Q.    Is "Jesus had two dads" profane?

18      A.    It's more under religious prejudice, hence the

19   word "Jesus" in there.

20      Q.    And so in what way does it show religious

21   prejudice?

22      A.    Once again, it's expressing a student's belief

23   on religion and their belief on their sexual orientation

24   or someone else's sexual orientation.

25      Q.    So clothing that has messages that show belief

                                                        95

# EXHIBIT 23

1                 UNITED STATES DISTRICT COURT

2                EASTERN DISTRICT OF CALIFORNIA

3                   SACRAMENTO DIVISION

4                        --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                   Plaintiff,

9        vs.                          No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                   Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                   DEPOSITION OF

19                   DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21             WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

```
 1        A.   The word "queer."

 2        Q.   How about "Jesus had two dads"?

 3        A.   It's an interesting one.  To be honest, I

 4   haven't seen that shirt, so I -- that would be under the

 5   same veil, I guess, the same umbrella as the other two

 6   that you brought up.

 7        Q.   So is there a particular word in there that is

 8   vulgar, profane or promotes sex or why would it be

 9   prohibited, why would "Jesus had two dads" --

10        A.   Again, it's promoting what your belief is, your

11   sexual orientation beliefs.  And you may not believe

12   that or may or may not, but that's what the shirt, in my

13   opinion, is saying that Jesus could have two dads, Jesus

14   could have two moms, either way, we wouldn't allow that.

15        Q.   So is that vulgar?

16        A.   No.

17        Q.   Is "Jesus had two dads" profane?

18        A.   It's more under religious prejudice, hence the

19   word "Jesus" in there.

20        Q.   And so in what way does it show religious

21   prejudice?

22        A.   Once again, it's expressing a student's belief

23   on religion and their belief on their sexual orientation

24   or someone else's sexual orientation.

25        Q.   So clothing that has messages that show belief
```

# EXHIBIT 24

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                 SACRAMENTO DIVISION

4                      --oOo--

5

6     T.V., through next friend and mother

7     HEATHER VICTOR,

8               Plaintiff,

9        vs.                        No. 2:15-CV-02163

10    DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11    Sierra High School; GREG LELAND, Vice

12    Principal of Sierra High School,

13              Defendants.

14    _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                  DEPOSITION OF

19                  DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21           WEDNESDAY, JANUARY 27, 2016

22

23

24

25    Reported by Marianne R. Boyd, CSR NO. 6685

                                                      1

1  in religion or sexual orientation is prohibited;
2  correct?
3       A.   Correct.
4            MS. NELSON:  Can we take a two-minute break.
5            (A recess was taken from 11:25 to 11:26 a.m.)
6            MS. NELSON:  Q.  So going now to the message on
7  T.V.'s teacher, "Nobody knows I'm a lesbian," is that
8  prohibited at Sierra High School?
9       A.   Yes.
10      Q.   And what word or words are prohibited in that
11  phrase, "Nobody knows I'm a lesbian"?
12      A.   Once again, it's the complete -- the full
13  statement, nobody knows I'm a lesbian.
14      Q.   Okay.  And so the "nobody" part is not
15  prohibited?
16      A.   Correct.
17      Q.   And the "knows" is allowed?
18      A.   Correct.
19      Q.   And "I'm a" those are allowed?
20      A.   Yes.
21      Q.   And "lesbian" is also allowed; is that correct?
22      A.   Allowed, no.  That's the connotation, the whole
23  statement "Nobody Knows I'm a Lesbian" is the reason why
24  she was sent up for the dress code.
25      Q.   So the word "lesbian," is that also prohibited
                                                        96

1    just by itself?

 2         A.    Yes.

 3         Q.    And so turning your attention back to Exhibit 5

 4    on the second page.

 5         A.    Okay.  Second page.

 6         Q.    Where it has -- where it quotes the dress code

 7    on that page, so "Nobody Knows I'm a Lesbian" is

 8    prohibited because -- why is it prohibited, the reasons

 9    listed here?

10         A.    Because it violates "Clothing, grooming,

11    accessories, and jewelry shall be free of writing,

12    pictures, symbols, or other insignia, which are crude,

13    vulgar, profane, obscene, libelous, slanderous, or

14    sexually suggestive."

15         Q.    So "Nobody Knows I'm a Lesbian," is that crude?

16         A.    No.

17         Q.    Is it vulgar?

18         A.    No.

19         Q.    Is it profane?

20         A.    No.

21         Q.    Is it obscene?

22         A.    No.

23         Q.    Is it libelous?

24         A.    No.

25         Q.    Slanderous?

                    ROUGH DRAFT - NOT CERTIFIED

# EXHIBIT 25

ROUGH DRAFT - NOT CERTIFIED

1                UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF CALIFORNIA

3                   SACRAMENTO DIVISION

4                        --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                   Plaintiff,

9        vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                   Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                   DEPOSITION OF

19                   DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21            WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                         1

```
 1     just by itself?

 2         A.    Yes.

 3         Q.    And so turning your attention back to Exhibit 5

 4     on the second page.

 5         A.    Okay.  Second page.

 6         Q.    Where it has -- where it quotes the dress code

 7     on that page, so "Nobody Knows I'm a Lesbian" is

 8     prohibited because -- why is it prohibited, the reasons

 9     listed here?

10         A.    Because it violates "Clothing, grooming,

11     accessories, and jewelry shall be free of writing,

12     pictures, symbols, or other insignia, which are crude,

13     vulgar, profane, obscene, libelous, slanderous, or

14     sexually suggestive."

15         Q.    So "Nobody Knows I'm a Lesbian," is that crude?

16         A.    No.

17         Q.    Is it vulgar?

18         A.    No.

19         Q.    Is it profane?

20         A.    No.

21         Q.    Is it obscene?

22         A.    No.

23         Q.    Is it libelous?

24         A.    No.

25         Q.    Slanderous?
```

A.   No.

          Q.   Sexually suggestive?

          A.   Could be, yes.

          Q.   Does it degrade any cultural values?

          A.   It could, depending on the person reading the
shirt, wearing the shirt.

          Q.   Does it degrade any religious values?

          A.   It could.

          Q.   Does it degrade any ethnic values?

          A.   It could.

          Q.   And what does that depend on?

          A.   Depending on that person's beliefs.

          Q.   Whose beliefs?

          A.   The person who is either wearing the shirt or
sees the shirt, it becomes offensive to that person.

          Q.   Is there any other reason that this message is
prohibited?

          A.   No.  Just that and the second part, "Clothing
that degrades any cultural, religious or ethnic values
or which advocate racial, ethnic, or religious prejudice
or discrimination, or which promote sex, the use of
tobacco, drugs, alcohol or unlawful acts."

          Q.   So "Nobody Knows I'm a Lesbian" does it
advocate racial prejudice?

          A.   No.

                                                    98

# EXHIBIT 26

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8              Plaintiff,

9      vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13              Defendants.

14   _____/

15

16          ROUGH DRAFT - NOT CERTIFIED

17

18            DEPOSITION OF

19            DAN BEUKELMAN

20          MANTECA, CALIFORNIA

21       WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

1      A.   Messages as in a classroom setting, it's

2   discussed in classroom settings.

3      Q.   I'm talking --

4      A.   But a shirt, correct.

5      Q.   So a shirt about abortion would be prohibited

6   because somebody might be mentally hurt?

7      A.   Correct.

8      Q.   And you previously said that references to

9   heterosexuality are prohibited by the district dress

10  code?

11     A.   Correct.

12     Q.   And messages about homosexuality, is that also

13  prohibited?

14     A.   The reason why --

15          MR. SPINELLI:  Don't assume why he wrote that.

16          MS. NELSON:  You don't have to focus on

17  Exhibit 7.  Let's move on from Exhibit 7.

18     A.   We don't allow any messages to promote

19  heterosexuality, homosexuality, pro-life, pro-choice,

20  those types of shirts.

21     Q.   Why are messages about heterosexuality

22  prohibited?

23     A.   Because we're fair and -- not discriminating

24  against a person's sexual preference one way or the

25  other, but we feel as a district and as a school and

91

1    myself, that that is an area where we are not going to

2    have students promote their sexuality on campus, whether

3    it be either or -- or non -- transgender anything to

4    that nature.

5       Q.   And so you believe that messages about sexual

6    orientation promote sexuality; is that correct?

7       A.   Not necessarily, no.  They can and on a high

8    school campus students do not differentiate the

9    difference between sexual orientation and sexuality and

10    promoting of sexuality, most students.

11       Q.   So is that why they're prohibited because most

12    students don't differentiate between those concepts?

13       A.   That would be the main reason.  And we do

14    not -- our thought process is that the students are

15    there to learn math, English, history, not about whether

16    you're promoting one's sexual orientation or another and

17    what your views are in that area.

18       Q.   And therefore sexual orientation is off the

19    table, it's prohibited as a message on a T-shirt?

20       A.   No, that's not true because we have shirts that

21    are allowed through clubs on campus that will -- our gay

22    straight alliance shirt for example, which is a club

23    sponsored event, that shirt is allowed on cable pus.

24       Q.   What does it?

25       A.   I believe it says Gay/Straight Alliance, GSA.

# EXHIBIT 27

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8              Plaintiff,

9       vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13              Defendants.

14   _____/

15

16           ROUGH DRAFT - NOT CERTIFIED

17

18              DEPOSITION OF

19              DAN BEUKELMAN

20            MANTECA, CALIFORNIA

21         WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

1  myself, that that is an area where we are not going to

2  have students promote their sexuality on campus, whether

3  it be either or -- or non -- transgender anything to

4  that nature.

5      Q.   And so you believe that messages about sexual

6  orientation promote sexuality; is that correct?

7      A.   Not necessarily, no.  They can and on a high

8  school campus students do not differentiate the

9  difference between sexual orientation and sexuality and

10 promoting of sexuality, most students.

11     Q.   So is that why they're prohibited because most

12 students don't differentiate between those concepts?

13     A.   That would be the main reason.  And we do

14 not -- our thought process is that the students are

15 there to learn math, English, history, not about whether

16 you're promoting one's sexual orientation or another and

17 what your views are in that area.

18     Q.   And therefore sexual orientation is off the

19 table, it's prohibited as a message on a T-shirt?

20     A.   No, that's not true because we have shirts that

21 are allowed through clubs on campus that will -- our gay

22 straight alliance shirt for example, which is a club

23 sponsored event, that shirt is allowed on cable pus.

24     Q.   What does it?

25     A.   I believe it says Gay/Straight Alliance, GSA.

                                                          92

# EXHIBIT 28

ROUGH DRAFT - NOT CERTIFIED

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                SACRAMENTO DIVISION

4                     --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                 Plaintiff,

9       vs.                      No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of    JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13                 Defendants.

14   _____/

15

16            ROUGH DRAFT - NOT CERTIFIED

17

18               DEPOSITION OF

19               DAN BEUKELMAN

20             MANTECA, CALIFORNIA

21           WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

ROUGH DRAFT - NOT CERTIFIED

1     A.    The word "queer."

 2     Q.    How about "Jesus had two dads"?

 3     A.    It's an interesting one.  To be honest, I

 4  haven't seen that shirt, so I -- that would be under the

 5  same veil, I guess, the same umbrella as the other two

 6  that you brought up.

 7     Q.    So is there a particular word in there that is

 8  vulgar, profane or promotes sex or why would it be

 9  prohibited, why would "Jesus had two dads" --

10     A.    Again, it's promoting what your belief is, your

11  sexual orientation beliefs.  And you may not believe

12  that or may or may not, but that's what the shirt, in my

13  opinion, is saying that Jesus could have two dads, Jesus

14  could have two moms, either way, we wouldn't allow that.

15     Q.    So is that vulgar?

16     A.    No.

17     Q.    Is "Jesus had two dads" profane?

18     A.    It's more under religious prejudice, hence the

19  word "Jesus" in there.

20     Q.    And so in what way does it show religious

21  prejudice?

22     A.    Once again, it's expressing a student's belief

23  on religion and their belief on their sexual orientation

24  or someone else's sexual orientation.

25     Q.    So clothing that has messages that show belief

                                                            95

1   in religion or sexual orientation is prohibited;

2   correct?

3       A.   Correct.

4           MS. NELSON:  Can we take a two-minute break.

5           (A recess was taken from 11:25 to 11:26 a.m.)

6           MS. NELSON:  Q.  So going now to the message on

7   T.V.'s teacher, "Nobody knows I'm a lesbian," is that

8   prohibited at Sierra High School?

9       A.   Yes.

10      Q.   And what word or words are prohibited in that

11  phrase, "Nobody knows I'm a lesbian"?

12      A.   Once again, it's the complete -- the full

13  statement, nobody knows I'm a lesbian.

14      Q.   Okay.  And so the "nobody" part is not

15  prohibited?

16      A.   Correct.

17      Q.   And the "knows" is allowed?

18      A.   Correct.

19      Q.   And "I'm a" those are allowed?

20      A.   Yes.

21      Q.   And "lesbian" is also allowed; is that correct?

22      A.   Allowed, no.  That's the connotation, the whole

23  statement "Nobody Knows I'm a Lesbian" is the reason why

24  she was sent up for the dress code.

25      Q.   So the word "lesbian," is that also prohibited

                                                    96

# EXHIBIT 29

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                SACRAMENTO DIVISION

4                     --oOo--

5

6     T.V., through next friend and mother

7     HEATHER VICTOR,

8                    Plaintiff,

9         vs.                        No. 2:15-CV-02163

10    DAN BEUKELMAN, Assistant Principal of    JAM-CDK

11    Sierra High School; GREG LELAND, Vice

12    Principal of Sierra High School,

13                   Defendants.

14    _____/

15

16               ROUGH DRAFT - NOT CERTIFIED

17

18                   DEPOSITION OF

19                   DAN BEUKELMAN

20                 MANTECA, CALIFORNIA

21             WEDNESDAY, JANUARY 27, 2016

22

23

24

25    Reported by Marianne R. Boyd, CSR NO. 6685

                                                    1

1   something to that effect.

  2       Q.   Let's say a T-shirt that just says "straight,"

  3   would that be prohibited at Sierra High School?

  4       A.   Once again, that would be a conversation to be

  5   had with the student to figure out why they're wearing

  6   the shirt.

  7       Q.   Under what circumstances would it be

  8   prohibited?

  9       A.   If their purpose of wearing that shirt was to

 10   say that they were a person that believes being straight

 11   sexuality wise or your sexual preference, that's the

 12   reason why you're wearing it, we would not allow that

 13   student to wear that shirt.

 14       Q.   So words that talk about sexual orientation are

 15   prohibited on T-shirts at Sierra High School; is that

 16   right?

 17       A.   Correct.

 18       Q.   What is your definition of the word "lesbian"?

 19       A.   My definition would be a woman that finds

 20   sexual preference towards another woman.  I guess

 21   simplistically I guess.

 22       Q.   Okay.  So do you believe that the word

 23   "lesbian" is a synonym for the message "I like girls who

 24   kiss girls"?

 25       A.   Yes.

                                                           103

# EXHIBIT 30

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF CALIFORNIA

3                  SACRAMENTO DIVISION

4                      --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8              Plaintiff,

9        vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of     JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13              Defendants.

14   _____/

15

16              ROUGH DRAFT - NOT CERTIFIED

17

18                 DEPOSITION OF

19                 DAN BEUKELMAN

20               MANTECA, CALIFORNIA

21            WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

                                                        1

1    Q.   Do you believe that the word "lesbian" includes
2    any other meaning besides physical sexual acts?
3    A.   No.
4    Q.   How about the word "gay"; does that include any
5    other meaning besides physical sexual acts?
6    A.   Yes.  As we talked about earlier, gay also is
7    the synonym for being happy.
8    Q.   Let's assume for this case that we're talking
9    about gay as the other meaning, which is a preference
10   for relationship with a person of the same gender.
11   A.   Okay.
12   Q.   Does that have any other meaning besides
13   physical sexual acts?
14   A.   It has a meaning to that's what they prefer
15   being gay, they either have a relationship if it's a man
16   to another man or a woman to another woman.  That's the
17   definition that I would see.
18   Q.   So is that a meaning that is besides sexual
19   acts or is that just physical sexual acts?  I'm just
20   confused.  Okay.  So do you believe that the word "gay"
21   includes any other meaning besides physical sexual acts?
22        MR. SPINELLI:  Asked and answered.  He just
23   answered it.
24        THE WITNESS:  Yes.  That's what I just said.
25   It could mean that you're happy as well, and you said

ROUGH DRAFT - NOT CERTIFIED

# EXHIBIT 31

ROUGH DRAFT - NOT CERTIFIED

1              UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF CALIFORNIA

3                SACRAMENTO DIVISION

4                     --oOo--

5

6    T.V., through next friend and mother

7    HEATHER VICTOR,

8                 Plaintiff,

9       vs.                        No. 2:15-CV-02163

10   DAN BEUKELMAN, Assistant Principal of      JAM-CDK

11   Sierra High School; GREG LELAND, Vice

12   Principal of Sierra High School,

13               Defendants.

14   _____/

15

16            ROUGH DRAFT - NOT CERTIFIED

17

18                DEPOSITION OF

19                DAN BEUKELMAN

20              MANTECA, CALIFORNIA

21            WEDNESDAY, JANUARY 27, 2016

22

23

24

25   Reported by Marianne R. Boyd, CSR NO. 6685

ROUGH DRAFT - NOT CERTIFIED

1    Q.   There was a poster incident.  There was a

2    conversation that T.V. had with another student that

3    Mr. Leland was dealing with where the student may have

4    said that they don't believe in the same type of things.

5    A.   Something to that effect.  I don't know exactly

6    what.

7    Q.   And there was a conversation in the U.S.

8    History class about a student who may have said

9    something to the effect of "All gays and Mexicans should

10   go to concentration camps."

11   A.   Yes.

12   Q.   Anything else?

13   A.   Not that I can recall.

14   Q.   And what disruption do you think would occur if

15   T.V. wore her T-shirt stating "Nobody Knows I'm a

16   Lesbian" to school tomorrow?

17        MR. SPINELLI:  Well, that could call for

18   speculation, but you can answer it based on your

19   experience and knowledge.

20        THE WITNESS:  Based on my experience -- you

21   know, I'm not sure.  I'm really not sure.  It could be

22   something that has passed through time and it's gone, or

23   it could be something that, you know, really becomes an

24   issue and we have a divided campus where you have one

25   side -- and this is just T.V.'s side or the other side

                                                    143

**ROUGH DRAFT - NOT CERTIFIED**

1    and maybe they do get into heated conversations, or it

2    may be one of those things where people have their own

3    little conversations about it.  I can't speculate to

4    what would actually happen on that.

5        Q.   So you can't speculate -- you're not sure what

6    disruption would occur if T.V. wore her T-shirt to

7    school tomorrow?

8        A.   No, I'm not.

9             MS. NELSON:  Okay.  Let's take our lunch break

10   then.

11                 (Whereupon the deposition adjourned at

12                 12:40 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

ROUGH DRAFT - NOT CERTIFIED

# EXHIBIT 32

**SPINELLI, DONALD & NOTT**
A Professional Corporation
Domenic D. Spinelli, SBN 131192
Alison W. Winter, SBN 251084
815 S Street, Second Floor
Sacramento, CA 95811
Telephone: (916) 448-7888
Facsimile:  (916) 448-6888
Email: DomenicS@SDNLaw.com

Attorneys for Defendants,
**DAN BEUKELMAN, Assistant Principal
of Sierra High School, and GREG LELAND,
Vice Principal of Sierra High School**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.V., through next friend and mother HEATHER VICTOR, <br><br> Plaintiffs, <br><br> vs. <br><br> DAN BEUKELMAN, Assistant Principal of Sierra High School; GREG LELAND, VICE PRINCIPAL OF SIERRA HIGH SCHOOL, <br><br> Defendants. | Case No. 2:15-CV-02163-JAM-CKD <br><br> **DEFENDANT DAN BEUKELMAN'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** <br><br> Complaint Filed: October 15, 2015 <br> Trial Date: February 6, 2017 |

**PROPOUNDING PARTY:**           **Plaintiff T.V.**

**RESPONDING PARTY:**           **Defendant Dan Beukelman**

**SET NUMBER:**           **One (1)**

Defendant DAN BEUKELMAN (hereinafter "DEFENDANT") through undersigned counsel, responds and objects to Plaintiff T.V.'s Special Interrogatories, as follows.

The following responses to Interrogatories are answered in the manner and form required by the Federal Rules of Civil Procedure Rule 26 and 33.

///

///

///

**SPECIAL INTERROGATORIES**

**SPECIAL INTERROGATORY NO. 1:**

State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION is disruptive.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to, and without waiving said objections, or any objections, Defendant responds as follows: On August 11, 2015, Mr. Leland brought T.V. to my office after she became argumentative with him about her t-shirt, which stated "Nobody knows I'm a lesbian." I told her that the t-shirt was not appropriate for school. We discussed what the shirt could "imply" sexually. I told T.V. that the dress code would be, and has been, similarly enforced against students who wore t-shirts indicating that they were heterosexual. This was the first of significant subsequent discussions regarding this t-shirt.

On August 13, I met with Mr. Leland, Mr. Hammarstrom, T.V., and her father to discuss a change of schedule so that T.V. would no longer be in one of Mr. Hammarstrom's classes. During that meeting, T.V. told us that she felt uncomfortable because other students had discussed religion and homosexuality in front of her. This was never brought to my attention before this point. T.V. essentially asked the administration to censor "Emily" while allowing T.V. to speak freely; she feels uncomfortable with other students expressing their freedom to speak, while taking no responsibility for her own speech potentially causing discomfort. Addressing T.V.'s concerns about her ability to exercise her own freedom of speech, along with her concerns or offense at others similarly expressing their speech, took considerable time away from the administrators' ordinary duties. In addition, it forced the administrators to elevate one students' freedom over another's.

Also during the August 13 meeting, both T.V. and her father indicated how much they liked Mr. Hammarstrom; T.V. stated he was her favorite teacher. She said that she would not wear her t-shirt anymore because she respected Mr. Hammarstrom and did not want to upset him. She agreed to stay enrolled in both of Mr. Hammarstrom's classes at that point. Toward the end of the meeting, Mr. Victor addressed the room, including T.V., and commented that he wished everyone could

1  forget the t-shirt, leave all personal beliefs at home, and come to school to learn. This number of

2  meetings, which does not include the meetings T.V. had with Mr. Hammarstrom and Mr. Leland

3  without me, is not typical and required that the administration and faculty to take substantial time

4  out from their ordinary duties, causing a distraction and disruption at the school site.

5  On August 24, 2015, I asked Mr. Leland to contact T.V. regarding an incident in Mr.

6  Hammarstrom's class where a student, "Emily," had made comments about religion; this was the

7  same student who had made comments about religion and sexuality earlier in the month. Prior to

8  T.V. wearing her T-shirt, she had never spoken to T.V. about religion or sexuality, a conversation

9  which T.V. apparently found offensive. Again, T.V. sought the ability to speak freely as to LGBT

10  issues, but not allowing her fellow students the same freedom. At this time, T.V. was removed from

11  her second period class, per her request and with her approval.

12  When a student requests a schedule change, alternate options and solutions are always

13  considered. To change a student's schedule, the administration must take into account that student's

14  credits, the availability of classes that would fit that student's schedule, the number of students that

15  are already in those available classes, and in some instances, based on the schedule change request,

16  the identity of the students in the class. For example, if a student requests a schedule change

17  because he is being bullied, it would not be prudent to change his schedule to place him in a class

18  with the "bully's" best friend. Once the students' schedules are created for a semester, it is not easy

19  to change them. T.V.'s t-shirt caused additional disruption because it was the impetus for her

20  schedule change; considerable time and school resources were spent enacting the change.

21  **SPECIAL INTERROGATORY NO. 2:**

22  State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION violates the

23  dress code that applies to students at Manteca High School.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

25  Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client

26  privilege and attorney work product doctrine. Subject to, and without waiving said objections, or

27  any objections, Defendant responds as follows: Plaintiff did not attend Manteca High School and

28

1  Defendant does not work at Manteca High School. Defendant is not aware of the dress code that

2  applies to students at Manteca High School.

3

4  DATED: January 22, 2016                               **SPINELLI, DONALD & NOTT**

5

6                                              By: _____

7                                                   DOMENIC D. SPINELLI
                                                   ALISON W. WINTER

8                                                   Attorneys for Defendants,
                                                   **DAN BEUKELMAN and GREG LELAND**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

The undersigned hereby asserts as follows:

I am a party to the above-entitled proceeding. The matters contained in the foregoing **DEFENDANT DAN BEUKELMAN'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE,** are true of my own knowledge, except as to the matters therein stated on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on  January 21 , 2016, at  Manteca , California.

DAN BEUKELMAN
Assistant Vice Principal of Sierra High School

INELLI, DONALD &
NOTT

# EXHIBIT 33

1  **SPINELLI, DONALD & NOTT**
   A Professional Corporation
2  Domenic D. Spinelli, SBN 131192
   Alison W. Winter, SBN 251084
3  815 S Street, Second Floor
   Sacramento, CA 95811
4  Telephone: (916) 448-7888
   Facsimile:  (916) 448-6888
5  Email: DomenicS@SDNLaw.com

6  Attorneys for Defendants,
   **DAN BEUKELMAN, Assistant Principal**
7  **of Sierra High School, and GREG LELAND,**
   **Vice Principal of Sierra High School**

8

9              **UNITED STATES DISTRICT COURT**

10             **EASTERN DISTRICT OF CALIFORNIA**

11

12  T.V., through next friend and mother          Case No. 2:15-CV-02163-JAM-CKD
    HEATHER VICTOR,
13                                                **DEFENDANT GREG LELAND'S**
                  Plaintiffs,                     **RESPONSE TO PLAINTIFF'S SPECIAL**
14                                                **INTERROGATORIES, SET ONE**
       vs.
15                                                Complaint Filed: October 15, 2015
    DAN BEUKELMAN, Assistant Principal of         Trial Date: February 6, 2017
16  Sierra High School; GREG LELAND, VICE
    PRINCIPAL OF SIERRA HIGH SCHOOL,
17
                  Defendants.
18
    **PROPOUNDING PARTY:**        **Plaintiff T.V.**
19
    **RESPONDING PARTY:**         **Defendants Greg Leland**
20
21  **SET NUMBER:**               **One (1)**

22          Defendant GREG LELAND (hereinafter "DEFENDANTS") through undersigned counsel,

23  responds and objects to Plaintiff T.V.'s Special Interrogatories, as follows.

24          The following responses to Interrogatories are answered in the manner and form required by

25  the Federal Rules of Civil Procedure Rule 26 and 33.

26  ///

27  ///

28  ///

# SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 1:**

State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION is disruptive.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to, and without waiving said objections, or any objections, Defendant responds as follows: On August 10, 2015, I received an email from music/band teacher Rick Hammarstrom that inquired as to whether a shirt with large print stating "Nobody knows I'm a lesbian" was appropriate for school. I told him that, based on past practice, such a t-shirt would not be allowed because it could lead to disruption in a classroom or on school grounds. I asked Mr. Hammarstrom to send T.V. to the office but he replied that he did not want T.V. to know that he was the teacher who reported the shirt. After second period that same day, I sent a campus monitor to send T.V. to the office. As T.V. had a conversation with Secretary Vi Anderson, I approached her and told her that she could not wear her t-shirt because it was a school disruption and, based on past practices, the school has not allowed t-shirts that express sexuality or sexual preference to be worn on campus. The school has t-shirts in the office that students can wear if their own shirts violate the dress code. T.V. refused to wear one of the school's shirts and instead went home. She was not disciplined in any way, including given detention or a suspension.

Later that morning, T.V.'s father called me. We discussed the reasons why the shirt was not appropriate for school and he agreed with me, assuring me that T.V. would not wear the shirt again. T.V.'s father also told me he was upset that Mr. Hammarstrom had made some comments about religion in his class, stating "if she can't wear her shirt, Hammar[strom] can't talk about religion." I agreed that if religion is not part of the curriculum, it should not be discussed in class. That same day, I received a message from T.V., indicating that she wanted to discuss the T-shirt further. The next day, August 11, I met with T.V. regarding the dress code policy. T.V. began arguing with me when I told her I was following the District's policy regarding the dress code. I suggested that she speak with Mr. Beukelman and walked her over to Mr. Beukelman's office. I met with T.V. again

DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

on August 12, 2015. T.V. told me that she had had a conversation with Mr. Hammarstrom earlier that day that had upset her. She wanted to transfer out of his Music Theory and Composition class, but remain in the other class she had with Mr. Hammarstrom. The next day, I met with Mr. Beukelman, Mr. Hammarstrom, T.V., and her father to discuss a change of schedule so that T.V. would no longer have to be in Mr. Hammarstrom's classroom. During that meeting, T.V. told us that she felt uncomfortable because other students had discussed religion and homosexuality in front of her. Also during the August 13 meeting, both T.V. and her father indicated how much they liked Mr. Hammarstrom; T.V. indicated he was her favorite teacher. She stated that she would not wear her t-shirt anymore because she respected Mr. Hammarstrom and did not want to upset him. She agreed to stay enrolled in both of Mr. Hammarstrom's classes at that point. On August 10 and August 13, T.V. mentioned that she wore the t-shirt specifically to see what reaction she would get from Mr. Hammarstrom. After the August 12 meeting, Mr. Hammarstrom and I spoke to "Emily," the student who had made statements regarding religion and sexuality in front of T.V. We told her that a conversation about religion and sexuality was not appropriate to have in the classroom. On August 24, 2015 I received an email from Mr. Beukelman, requesting that I contact T.V. regarding an incident with this same student. I did so, and afterwards, T.V. and I had a conversation regarding comments the student had made about religion. T.V. again indicated that she wanted to transfer out of this class and we accommodated her request. I also spoke to "Emily" again about whether it was appropriate to discuss religion and sexuality in class. "Emily" informed me that T.V. had been a participant in that conversation.

Student dress code issues and violations are a major concern at Sierra High School. Violations of the dress code can cause a major disruption in the school day, including students interrupting class to discuss the offending item, students "sharing" offending items such as hats, and students engaging in arguments or even physical altercations on the basis of perceived offensive clothing. The school staff has been instructed, and works relentlessly, to identify dress code violations and rectify them appropriately, whether asking the student to remove the article of clothing, issuing a detention, setting up a meeting with the student and parents, etc. The school

DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1  office maintains some t-shirts for students to wear if the shirts they wear to school are deemed
2  inappropriate.
3       In all, I attended three meetings regarding one t-shirt. I had conversations with Mr.
4  Hammarstrom, Mr. Taylor and T.V. outside of those meetings. I had two meetings with "Emily,"
5  whose statements T.V found offensive. This took substantial time away from my ordinary job
6  duties and does not constitute a typical response the administration must make to a dress code issue.
7  The school staff had to institute and undertake a schedule change for T.V., which is time-
8  consuming, complex, and was a further disruption of school activity and use of school resources.
9  Further, it came to my attention that T.V. and her peers were posting about the t-shirt, her inability
10  to wear the shirt, and this lawsuit, on social media. I had to take even further time from my ordinary
11  duties to address those concerns. Each of these significant disruptions began with one t-shirt; none
12  of these specific concerns existed before T.V. wore her t-shirt. Some of the disruption has occurred
13  because, although T.V. has set forth her beliefs through her t-shirt, she does not allow others to
14  respond to her regarding her shirt. She has become upset at "Emily," Mr. Hammarstrom, and other
15  students allegedly making comments to her or having a discussion near her about religion and
16  sexuality. Further administrative time has been spent addressing T.V.'s concerns, and her apparent
17  desire to have the freedom to express all of her own opinions, without others having the opportunity
18  to express their opinions in response.
19  **SPECIAL INTERROGATORY NO. 2:**
20       State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION violates the
21  dress code that applies to students at Manteca High School.
22  **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**
23       Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client
24  privilege and attorney work product doctrine. Subject to, and without waiving said objections, or
25  any objections, Defendant responds as follows: Plaintiff did not attend Manteca High School and
26  Defendants do not work at Manteca High School. Defendants are not aware of the dress code that
27  applies to students at Manteca High School.
28

1    DATED: January 22, 2016

2

3                                    SPINELLI, DONALD & NOTT

4    By:_____
                                       DOMENIC D. SPINELLI
5                                      ALISON W. WINTER
                                       Attorneys for Defendants,
6                                      **DAN BEUKELMAN and GREG LELAND**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>VERIFICATION</u>

The undersigned hereby asserts as follows:

I am a party to the above-entitled proceeding. The matters contained in the foregoing **DEFENDANT GREG LELAND'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE,** are true of my own knowledge, except as to the matters therein stated on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ____*1/21*____, 2016, at _*Manteca*_, California.

GREG LELAND
Vice Principal of Sierra High School

# EXHIBIT 34

**SPINELLI, DONALD & NOTT**
A Professional Corporation
Domenic D. Spinelli, SBN 131192
Alison W. Winter, SBN 251084
815 S Street, Second Floor
Sacramento, CA 95811
Telephone: (916) 448-7888
Facsimile: (916) 448-6888
Email: DomenicS@SDNLaw.com

Attorneys for Defendants,
DAN BEUKELMAN, Assistant Principal
of Sierra High School, and GREG LELAND,
Vice Principal of Sierra High School

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.V., through next friend and mother HEATHER VICTOR,<br><br>        Plaintiffs,<br><br>vs.<br><br>DAN BEUKELMAN, Assistant Principal of Sierra High School; GREG LELAND, VICE PRINCIPAL OF SIERRA HIGH SCHOOL,<br><br>        Defendants. | Case No. 2:15-CV-02163-JAM-CKD<br><br>**DEFENDANT GREG LELAND'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET TWO**<br><br>Complaint Filed: October 15, 2015<br>Trial Date: February 6, 2017 |

**PROPOUNDING PARTY:**      **Plaintiff T.V.**

**RESPONDING PARTY:**      **Defendant Greg Leland**

**SET NUMBER:**      **Two (2)**

      Defendants DAN BEUKELMAN and GREG LELAND (hereinafter "DEFENDANTS") through undersigned counsel, responds and objects to Plaintiff T.V.'s Special Interrogatories, as follows.

      The following responses to Interrogatories are answered in the manner and form required by the Federal Rules of Civil Procedure Rule 26 and 33.

///

///

DEFENDANT GREG LELAND'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 3:**

State all facts that support YOUR contention that PLAINTIFF'S EXPRESSION violates the dress code that applies to students at Sierra High School.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

Objection. Overbroad as to time. This interrogatory seeks to invade the attorney-client privilege and attorney work product doctrine. Subject to, and without waiving said objections, or any objections, Defendant responds as follows: The "school dress code" at Sierra High School is the Manteca Unified School District dress code. Enforcement of the dress code is critical because the school has an obligation to provide and safe learning environment for all of its students. Part of a high schooler's education is learning to control his or her impulses, hormones and emotions while still expressing his or her developing personality. Each student must learn to respectfully state his or her opinions without excessively offending or censoring their peers. Students do not have the same right to freedom of speech that they would enjoy outside of the school campus. Allowing students to communicate anything they want at any time, may lead to inappropriate, offensive and distracting speech. To that end, the District's dress code prohibits communications through apparel that are sexually suggestive, degrade religious or ethnic values, or which advocates religious prejudice or discrimination. The dress code states:

> Clothing, accessories, and jewelry shall be free of writing, pictures, symbols or other insignia, which are crude vulgar, profane, obscene, libelous, slanderous, or sexually suggestive. Clothing that degrade[s] any cultural, religious or ethnic values or which advocate racial, ethnic, or religious prejudice or discrimination, or which promote sex, the use of tobacco, drugs, or alcohol or any unlawful acts are prohibited.

In the past six years, there have been approximately 2,530 documented dress code violations at the high school. These have included students wearing items of clothing or other apparel that revealed too much skin, stated "I love boobies" in reference to breast cancer support, referenced drugs, alcohol or violence, or were gang-related. All of these types of violations were by both male and female students. T.V.'s t-shirt stating "Nobody knows I'm a lesbian" has sexual connotations with high school students. Just like a t-shirt stating "I like girls who kiss girls" presents an added

SPINELLI, DONALD
& NOTT

sexual component to the communication, the shirt stating that a student is a lesbian brings the shirt a step closer to a more sexual communication. Another student was documented for wearing a shirt stating "Just Do You," as it was interpreted by school staff as being sexual in nature and relating to self-gratification. T.V.'s t-shirt stating "Nobody knows I'm a lesbian" is not a content-neutral expression of LGBT support, such as the school's Gay-Straight Alliance t-shirt stating "BElieve in YOUrself," which does not specifically reference any sexuality.

Further, the school has an obligation to protect the rights and freedoms of T.V. as well as every other person on campus. Among those rights is the right to be left alone and have a school environment that is free from distraction and disruption. Some students found T.V.'s t-shirt to be offensive and would prefer not to be confronted with T.V.'s shirt while at school. T.V. does not have a greater freedom to wear her t-shirt than other students have to not be confronted by shirts such as hers that they find unpleasant. To the extent that the offense at the shirt is grounded in an individual's religion, T.V.'s t-shirt violates the dress code because it degrades those students' religious values or belief that homosexuality is improper. Importantly, the administration is not stating or implying that LGBT rights are not valid, important and sensitive. However, as neutral administrators, they are simply unable to allow T.V.'s expression regarding LGBT issues to take priority over other students' freedoms and opinions. No individual's freedom of expression or speech – or their freedom to be free from a distracting environment at school – can be elevated over another's. The school has the authority to limit its students' speech when appropriate and here, the administration has determined that expressions of sexuality or sexual orientation are not appropriate for school.

DATED: January 22, 2016                    **SPINELLI, DONALD & NOTT**

By:_____
DOMENIC D. SPINELLI
ALISON W. WINTER
Attorneys for Defendants,
**DAN BEUKELMAN and GREG LELAND**

Case: *T.V. v. Beukelman*
Eastern District of California Case No.: 2:15-cv-02163-JAM-CKD

## <u>VERIFICATION</u>

The undersigned hereby asserts as follows:

I am a party to the above-entitled proceeding. The matters contained in the foregoing

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET**

**TWO,** are true of my own knowledge, except as to the matters therein stated on information and

belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the

laws of the State of California that the foregoing is true and correct.

Executed on _____1/21_____, 2016, at ____Manteca____, California.

_____
GREG LELAND
Vice Principal of Sierra High School